**AMERICAN HOIST & DERRICK COMPANY, Plaintiff-Appellant, Cross-Appellee,**

v.

**SOWA & SONS, INC., Defendant-Appellee, Cross-Appellant.**

**Appeal Nos. 83–555, 83–564.**

United States Court of Appeals, Federal Circuit.

Jan. 12, 1984.

**1352**

were Pierre Kolisch and Francine H. Gray, Houston, Tex.

Daniel P. Chernoff, Portland, Ore., argued for appellee. With him on the brief was Ingrid L. Swenson, Portland, Ore.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and KASHIWA, Circuit Judge.

RICH, Circuit Judge.

American Hoist and Derrick Co. (AmHoist) appeals from the unpublished decision of the United States District Court for the District of Oregon holding for Sowa & Sons, Inc. (Sowa) on AmHoist's suit for infringement of claims 3, 5, and 7 of its Shahan U.S. Patent No. 4,079,584, issued March 21, 1978, for a "Heavy Duty Shackle." After a two and one-half day jury trial, the jury rendered a verdict for defendant by answering written interrogatories as to two *legal* issues, stating that each claim in suit was invalid for obviousness and for fraud in the prosecution of those claims in the United States Patent and Trademark Office (PTO).

In three separate opinions, the district court held (1) that it would adopt the jury's determination of obviousness, (2) that there was sufficient evidence to support the jury's "findings" of fraud, and, while the degree of fraud was insufficient to support Sowa'. unfair competition and antitrust counterclaims, that it was sufficient to render this an exceptional case under 35 U.S.C. § 285 justifying an award to Sowa of its attorney fees, and (3) that Sowa was entitled to $50,000 in attorney fees rather than the $90,367.55 requested.

Sowa cross-appeals from the decision of the court granting AmHoist's motion for summary judgment on Sowa's unfair competition and antitrust counterclaims.

Because of erroneous jury instructions, and because there exist disputed issues of fact, we vacate and remand for a new trial. However, we reverse the trial court's determination that the jury could properly have found that no damages were proved, and

Edward W. Goldstein, Houston, Tex., argued for appellant. With him on the brief

we affirm in part and reverse in part the decision dismissing Sowa's antitrust and unfair competition counterclaims.

### Background

As described in the "ABSTRACT" of the patent in suit, the invention relates to

A heavy duty shackle for use under great loads, such as in anchor lines. The shackle is formed from a cylindrical bar rod by shaping the ends to a reduced diameter, and forging the central portion into a flattened shape having the cross-section of a wide shallow U shape. The bottom surface of the central section is in the form of a portion of a circular cylinder. The ends of the bar are flattened and a central opening is forged and based for a pin. The formed bar is then bent in the form of a bow to provide an eye for the shackle, with two parallel ears spaced a selected distance apart.

Figures 5 and 6 of the patent are reproduced below:

*Fig. 5*

*Fig. 6*

In Fig. 5, 50 is the "eye" of the shackle, 51 labels the "rein sections," 55 the "ears," and 54 and 57 designate parts of a pin that may be threaded and held on by a nut 58 and/or cotter pin as shown. Fig. 6 shows at 28 a depressed central portion, at 30 flat surfaces, and 31 indicates the cylindrical under surface of the shackle.

Claims 3, 5, and 7, all claims in suit, read as follows:

3. A shackle bow for heavy duty use under large loads, as in anchor lines, comprising:

a. a rein section adjacent the two ends of said shackle for a selected length and of diameter X', each said rein section being between a central cylindrical portion and a flattened ear portion;

b. said central cylindrical portion being of a broadened flattened shape, having a U-shaped cross-section with a circular bottom surface, the radius of said bottom surface being at least substantially equal to X';

c. said shackle being in the shape of a bow, with said U-shape of said central cylindrical portion directed outwardly, around a central eye, said ears being substantially parallel, spaced apart a distance less than the diameter of said eye, and having coaxial central openings therein to receive a pin therethrough.

5. A shackle bow having an approximately circular eye, with two rein sections leading to two substantially parallel ears; .

the cross-section of said bow being in the form of a broad flat U section, with the bottom (inner) surface having as large a radius as possible;

the thickness of the cross-section of said bow substantially constant;

the cross-section of said rein section approximately circular;

the cross-section of said ears being broad and thin, with aligned central openings, and thick flanges formed by forging central depressions in said ears;

said shackle bow being heat treated.

7. The shackle bow of claim 5 including a locked pin through said central openings.

Defending against AmHoist's suit for infringement of these claims, Sowa denied infringement and counterclaimed for a declaratory judgment of invalidity. Sowa later brought to AmHoist's attention what it deemed new prior art, leading AmHoist to file an application for reissue of its patent. Sowa then amended its answer and counterclaimed for damages for unfair competition and for violation of federal antitrust law, asserting that AmHoist committed fraud in the PTO by not disclosing to the examiner the prior art that Sowa discovered.

Sowa stipulated in a pretrial order that its products infringed the claims in suit, Sowa's counterclaims were severed, and the issue of validity was tried to a jury. The jury returned its answers to two written interrogatories on ultimate *legal* issues, cf. Fed.R.Civ.P. 49(b), stating that each claim was invalid under 35 U.S.C. § 103 and for "fraud on the Patent Office."

Shortly after the verdict, the PTO completed examination of the reissue application, allowing claims 1, 2, 5, 6, and 7 without change in the first Office Action. After AmHoist amended claim 3 to clarify the meaning of "diameter," and swore that the mistake in claim 3 occurred without deceptive intent, it too was allowed, as was claim 4 which had been objected to as depending from a rejected claim.

The district court stated:

Because the issue of obviousness under 35 U.S.C. § 103 is one of law rather than of fact, it is encumbent [sic] upon the court rather than the jury to make the final determination. Guided by the jury's findings and by the evidence, I hold the Shahan patent to be invalid under § 103.

In reaching its conclusion, the court first noted that because the PTO was not in possession of all "relevant prior art" the 35 USC 282 presumption of validity "disappears" because "the court is not entitled to rely upon the patent office expertise." After setting forth the scope and content of the prior art and stating that testimony of several experts indicated that a person of ordinary skill in the art of heavy-duty shackle design is "a skilled engineer capable of determining stress requirements, material, and shape designs and would have a high familiarity with the design, manufacturing, and performance characteristics of various types of rope fittings and fixtures," the court concluded a two-page opinion on validity as follows:

The jury determined that the subject matter of the Shahan patent would have been obvious to one of ordinary skill in the art at the time of the claimed invention. I agree. The only difference other than size between the Shahan design and other cited, prior art is the presence of rein portions of either rectangular (Crosby-Laughlin and Nicro/Fico) or ellipsoidal (Schaefer Marine), rather than circular cross-section. Such circular cross-section design is not new, however, and can be found on the old and well-known anchor shackle design.

In another opinion, the court determined this to be an "exceptional case" within 35 U.S.C. § 285, although "the degree of fraud was insufficient to support defendant's unfair competition claim":

A jury determined that AmHoist's patent was invalid. On each claim of the patent in issue, the jury determined that AmHoist committed fraud on the Patent Office. The fact that a reissue application was allowed by a Patent Office examiner makes this a harder case, but does not remove the finding of fraud by the jury. * * *.

* * * * * *

I find that plaintiff's actions taken to procure its Shahan patent were well within the range of activities sufficient to find the ensuing patent infringement case "exceptional" within the meaning of § 285. A jury properly concluded that AmHoist committed fraud on the Patent Office. Even assuming that AmHoist's conduct was short of fraud, I would find that it was in excess of simple negligence so as to support a finding of "exceptional."

I further find that an award of attorney's fees in this case is appropriate. Defendant is a smaller company than plaintiff and enjoyed substantially less of the market share. The amount of potential damages for the alleged infringement was small—a factor which might have counseled Sowa to not undertake the expensive defense of this case. Sowa's success in invalidating an unlawfully obtained patent accrues not only to its interests but also to the public interest. Under these circumstances, I find that it would be unjust for Sowa to bear the expense of its counsel's fees in successfully pursuing this case.

In its final opinion, the district court entered an award of $50,000 in attorney fees, but "only for work on the patent claims and not on the counterclaims [Sowa] pursued." Sowa had requested $90,367.55, but the court believed that to be "too high considering all relevant factors."

*Arguments on Appeal*

AmHoist argues that the court erred in submitting the fraud issue to the jury because there was no evidence of bad faith and intent to deceive the examiner or gross negligence representing such reckless disregard for the truth as to be tantamount to bad faith, and because there was insufficient evidence to show materiality of the undisclosed art by clear, unequivocal and convincing evidence; that the award of attorney fees based on the jury's finding of fraud must also be reversed; and that the jury's finding that AmHoist suffered no damage as a result of Sowa's admitted infringement must also be reversed because AmHoist's evidence as to damages was uncontroverted except as to calculation of profit from lost sales.

With respect to jury instructions, AmHoist argues that the court erred: in instructing the jury that AmHoist, the patentee, had the burden of proving nonobviousness if Sowa introduced at trial art more pertinent than the art cited by the examiner; in refusing to instruct the jury on the effect of the reissue proceedings on the quantum of proof necessary for Sowa to prove obviousness; in refusing to submit the factual inquiries underlying 35 U.S.C. § 103 to the jury in the form of special interrogatories under Fed.R.Civ.P. 49; and in instructing the jury that the invention described in AmHoist's patent must produce new and unexpected results to be considered nonobvious.

With respect to AmHoist's allegation that the court erred in submitting the fraud issue to the jury, Sowa responds that there was substantial evidence of fraud upon which the jury could have relied. Sowa also submits that the jury could have properly found, as it did, that AmHoist failed to establish any lost profits on the sale by Sowa of the accused shackles.

With respect to AmHoist's assertion that the court erred in instructing the jury that AmHoist bore the burden of proving nonobviousness, Sowa argues: (1) that AmHoist did not object to the instruction in question, *see* Fed.R.Civ.P. 51; (2) that the instruction

was clearly in conformity with the law of the circuit in which the case was tried; (3) that, even if it was error to give the instruction in question, that error was harmless because there is another, independent ground upon which the judgment of the lower court was based, namely, that the claims in suit were obtained by fraud; and (4) that aside from the propriety of the instruction, independent review of the record by this court (it being asserted by Sowa that there is no dispute as to the underlying facts) will disclose that the claims are invalid under 35 U.S.C. § 103. However, Sowa's assertion that the underlying facts are undisputed is itself the subject of dispute.

AmHoist replies that it complied with Fed.R.Civ.P. 51 by submitting requested jury instructions and verdict forms placing the burden of proving obviousness on Sowa, and that it was not required to object at all to an instruction which properly set forth the law of the Ninth Circuit.

## OPINION

While we regret having to order a new trial before an already overburdened district court, a new trial is mandated, and this case is a good illustration of the difficulties inherent, generally, in the use of juries to resolve patent disputes and, specifically, in allowing the use in such cases of general verdict forms unaccompanied by interrogatories on the controlling facts.

The verdict returned by the jury is reproduced in full below:

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMERICAN HOIST & DERRICK COMPANY,

 Plaintiff, Civil No. 79-983-PA

 v. V E R D I C T

SCWA & SONS, INC.,

 Defendant.

1. Do you find that claim 3 of the patent is

 Valid \_\_\_\_

 Invalid _X_ [CHECK ONLY ONE]

2. If you have found that claim 3 of the patent is invalid, then state the reason or reasons why by checking the applicable item(s) below. [DO NOT ANSWER THIS IF YOU FOUND CLAIM 3 VALID]

 a. The subject matter of claim 3 would have been obvious to one of ordinary skill in the art at the time the claimed invention was made. _X_

 b. Plaintiff committed fraud on the Patent Office in connection with claim 3. _X_

 c. James W. Shahan is not the inventor of claim 3 and the patent office was intentionally deceived in this regard. \_\_\_\_

3. Do you find that claim 5 of the patent is

 Valid \_\_\_\_

 Invalid _X_ [CHECK ONLY ONE]

4. If you have found that claim 5 of the patent is invalid, then state the reason or reasons why by checking the applicable item(s) below. [DO NOT ANSWER THIS IF YOU FOUND CLAIM 5 VALID]

 a. The subject matter of claim 5 would have been obvious to one of ordinary skill in the art at the time the claimed invention was made. _X_

 b. Plaintiff committed fraud on the Patent Office in connection with claim 5.

5. Do you find that claim 7 of the patent is

 Valid \_\_\_\_ [CHECK ONLY ONE]

 Invalid \_\_\_\_

6. If you have found that claim 7 of the patent is invalid, then state the reason or reasons why by checking the applicable item(s) below. [DO NOT ANSWER THIS IF YOU FOUND CLAIM 7 VALID]

 a. The subject matter of claim 7 would have been obvious to one of ordinary skill in the art at the time the claimed invention was made. _X_

 b. Plaintiff committed fraud on the Patent Office in connection with claim 7.

7. Regardless of your previous answers, what is the amount of the profits lost by plaintiff, if any, as the result of defendant's sales of 18 wide-body shackles?

 Damages $ 0

Dated the 12 day of November, 1981.

Before the jurors retired to reach this verdict, the trial court read to them twenty-six pages of instructions. AmHoist urges reversal on the ground that several of those instructions were erroneous. On consideration of those instructions, in light of *all* the instructions given, we are constrained to agree.

*1. 35 U.S.C. § 282*

With respect to the burden of proof, the court instructed the jury as follows:

If you find the prior art references which defendant has cited are no more pertinent than the art utilized by the examiner when examining the Shahan patent[,] then defendant has the burden of establishing obviousness by "clear and convincing evidence." If, on the other hand, you find any of the prior art references which defendant has cited are more pertinent than the art utilized by the examiner when examining the Shahan patent, then that presumption of validity *disappears* as to that issue of obviousness and the *plaintiff has the burden of proof* by a preponderance of the evidence. [Emphasis ours.]

That instruction was erroneous in two respects. First, it misassigned the burden of proof. The final sentence of 35 U.S.C. § 282 mandates that "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." Precedent adopted by this court pursuant to *South Corp. v. United States,* 690 F.2d 1368, 1369, 215 USPQ 657, 658 (Fed.Cir.1982), declares that burden to be permanent, emphasizing that § 282

\* \* \* mandates not only a presumption shifting the burden of going forward in a purely procedural sense, but also *places the burden of persuasion on the party who asserts that the patent is invalid.* To speak of the presumption as "no longer attaching" is to risk a concomitant, and unspoken, assumption that the burden of persuasion is thereafter no longer upon

him who asserts invalidity. That view is contrary to the meaning of § 282, for *the burden of persuasion is and remains always upon the party asserting invalidity,* whether the most pertinent prior art was or was not considered by the examiner. [Emphasis ours.]

*Solder Removal Co. v. U.S. International Trade Commission,* 582 F.2d 628, 632–33, 199 USPQ 129, 133 (CCPA 1978) (footnotes omitted).[1] *SSIH Equipment, S.A. v. U.S. International Trade Comm.,* 718 F.2d 365, 375, 218 USPQ 678, 687 (1983). On this point we, like the CCPA, disagree with the Ninth Circuit position stated in *Tveter,* supra note 1, which was that because the examiner did not have certain prior art patents before him when examining the application for the patent in suit, which patents were closer art than he cited, the burden of proving non-obviousness was on the patentee. Our position is that this is never so because it would be contrary to the statute.

The second and more general error in the above jury instruction was that it failed to explain accurately the "presumption of validity," which is not surprising. The prevailing confusion in the cases over its meaning and effect has been engendered by assertions that under some circumstances the presumption is retained and under others it is destroyed, or that the presumption is strengthened or weakened, as a result of which, it has been said, the burden of proof shifts from one party to another or the standard of proof changes.

The presumption was, originally, the creation of the courts and was a part of the judge-made body of patent law when the

1. AmHoist's proposed instructions, Sowa's proposed instructions, and the initial jury instructions proposed to the parties by the court all contained an instruction on the burden of proof that was in accord with *Solder Removal,* and with 35 U.S.C. § 282. It was changed at conference on the urging of counsel for Sowa, who had reversed course in "DEFENDANT'S OBJECTIONS TO PLAINTIFF'S REQUESTED JURY INSTRUCTIONS" and "DEFENDANT'S OBJECTIONS TO PLAINTIFF'S VERDICT FORMS AND AMENDED JURY INSTRUCTIONS." The change of heart and decision to argue that AmHoist had the burden of proof were apparently precipitated by Sowa's discovery of *Tveter v. AB Turn-O-Matic,* 633 F.2d 831, 833, 209 USPQ 22, 25 (9th Cir.1980).

Sowa argues that AmHoist may not complain of this erroneous instruction because its attorney did not formally object when asked if anyone had "a problem" with it. At that same in-chambers discussion of the court's proposed jury instructions, however, when confronted with Sowa's citation and reliance on *Tveter,* he indicated that AmHoist would "yield to the Ninth Circuit law." *See* Fed.R.Civ.P. 46.

Patent Act of 1952 was written. That act, for the first time, made it statutory in § 282, first paragraph, which, before the amendments of 1965 and 1975, was of the utmost simplicity. It read:

A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on the party asserting it.

The reviser's note to that section simply said:

The first paragraph declares the existing presumption of validity of patents.

This was a codification of sorts, replacing the morass of case law with one simple statutory declaration. The Commentary on the New Patent Act by P.J. Federico, principal author of the act, published in 35 USCA, page 54, expands somewhat on the reviser's note, saying:

The first paragraph of section 282 declares that a patent shall be presumed valid and that the burden of establishing invalidity of a patent shall rest on a party asserting it. That a patent is presumed valid was the law prior to the new statute, but it was not expressed in the old statute. The statement of the presumption in the statute should give it greater dignity and effectiveness.

The named author of this opinion, who also worked on the 1952 act with Mr. Federico, explained it to the New York Patent Law Association on November 6, 1952 (in a speech of limited publication) in these words:

Section 282 puts into the statute the presumption of validity for the benefit of those cynical judges who now say the presumption is the other way around.

In short, in 1952 the case law was far from consistent—even contradictory—about the presumption and, absent statutory restraint, judges were free to express their individual views about it. Behind it all, of course, was the basic proposition that a government agency such as the then Patent Office was presumed to do its job. *Morgan v. Daniels,* 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894). On the burden of persuasion in the face of such a presumption, long before enactment of the present statute, the Supreme Court reviewed the situation in *Radio Corp. v. Radio Laboratories,* 293 U.S. 1, 55 S.Ct. 928, 78 L.Ed. 1453 (1934), noting (293 U.S. p. 7, 55 S.Ct. p. 931) that the force of the presumption "has found varying expression in this and other courts." Justice Cardozo, after reviewing a variety of expressions of the standard of proof required to overcome the presumption of validity and while noting that "Gradations of difference so subtle are not susceptible of pursuit without leading us into a land of shadows," concluded (293 U.S. p. 8, 55 S.Ct. p. 931):

Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance.

■ The two sentences of the original § 282, which, though added to, have not been changed, amount in substance to different statements of the same thing: the burden is on the attacker. And, as this court has been saying in other cases, that burden never shifts. The only question to be decided is whether the attacker is successful. When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents. In some cases a PTO board of appeals may have approved the issuance of the patent.

■ When an attacker, in sustaining the burden imposed by § 282, produces prior art or other evidence *not* considered in the PTO, there is, however, *no reason to defer* to the PTO so far as *its* effect on validity is concerned. Indeed, new prior art not before the PTO may so clearly invalidate a

patent that the burden is fully sustained merely by proving its existence and applying the proper law; but that has no effect on the presumption or on who has the burden of proof. They are static and in reality different expressions of the same thing—a single hurdle to be cleared. Neither does the *standard* of proof change; it must be by clear and convincing evidence or its equivalent, by whatever form of words it may be expressed. *See Radio Corp.,* supra. What the production of new prior art or other invalidating evidence not before the PTO does is to eliminate, or at least reduce, the element of deference due the PTO, thereby partially, if not wholly, *discharging* the attacker's burden, but neither shifting nor lightening it or changing the standard of proof. When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent. When new evidence touching validity of the patent not considered by the PTO is relied on, the tribunal considering it is not faced with having to *disagree* with the PTO or with *deferring* to its judgment or with taking its expertise into account. The evidence may, therefore, carry more weight and go further toward sustaining the attacker's unchanging burden.

To summarize on this point, § 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker. That burden is constant and never changes and is to convince the court of invalidity by clear evidence. Deference is due the Patent and Trademark Office decision to issue the patent with respect to evidence bearing on validity which it considered but no such deference is due with respect to evidence it did not consider. All evidence bearing on the validity issue, whether considered by the PTO or not, is to be taken into account by the tribunal in which validity is attacked.

### 2. 35 U.S.C. § 103

In ending its jury charge on the § 103 nonobviousness requirement, the court said:

You must next determine whether the differences between plaintiff's claimed invention and the prior art, if any, and as you have found them to be, produce a new and unexpected result. That is, you must determine whether the elements making up plaintiff's claimed invention combine so as to perform in some way or manner, a new and unexpected function in combination than they perform separately. The reason for this is that a patented invention which unites only old elements without producing either a new and unexpected result merely withdraws from the public's use that which was known before.

Instructing a jury that the presence of such a "new and unexpected function in combination" is a requirement of patentability— and reasoning that were the law otherwise a claimed combination of old elements would "merely [withdraw] from the public's use that which was known before"—is wholly erroneous.

While the *existence* of a new and unexpected result or function or a so-called "synergistic" effect may *support* a holding of nonobviousness, *e.g., Clark Equipment Co. v. Keller,* 570 F.2d 778, 789, 197 USPQ 209, 217 (8th Cir.1978) ("in the patent law context, 'synergism' has no talismanic power; 'synergism' is merely one indication of nonobviousness"), our predecessor courts have considered and rejected the notion that a new result or function or synergism is a requirement of patentability. It was emphasized that "under this standard * * * one would focus solely on the product created rather than on the obviousness or nonobviousness of its creation, as required under § 103." *General Motors Corp. v. U.S. International Trade Commission,* 687 F.2d 476, 482–83, 215 USPQ 484, 489 (CCPA 1982). *See In re Sponnoble,* 405 F.2d 578, 585, 56 CCPA 823, 160 USPQ 237, 243 (1969) ("A patentable invention * * * *may* result even if the inventor *has,* in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the results inherent in their use."); *Bowser, Inc. v. United States,* 388

F.2d 346, 349–350, 181 Ct.Cl. 834, 56 USPQ 406, 409 (1967). We agree with the Seventh Circuit's analysis of the "fundamental flaws" in the theory that synergism is essential to patentability. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 967–72, 200 USPQ 769, 774–79 (7th Cir. 1979). *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed. Cir.1983).

We also agree with AmHoist that the district court should have submitted to the jury the factual inquiries underlying a § 103 determination in the form of special interrogatories. Fed.R.Civ.P. 49. While the form of jury verdict is normally a matter of discretion with the trial court, one court has noted that the "failure to utilize this method in a patent case places a heavy burden of convincing the reviewing court that the trial judge did not abuse his discretion." *Baumstimler v. Rankin*, 677 F.2d 1061, 1071–72, 215 USPQ 575, 584 (5th Cir.1982). See especially part "III. Cleaning out the Well."

The use of special interrogatories, as noted by the Fifth Circuit, *id.*, facilitates appellate review (and review by the trial court on any motion for judgment notwithstanding the verdict), for such use frees the court from having to survey every possible basis for the jury's decision. *Cf. E.I. du Pont de Nemours & Co. v. Berkley and Co.*, 620 F.2d 1247, 1256 n. 5, 205 USPQ 1, 7 n. 5 (8th Cir.1980). Utilization of that verdict form may also help avoid lengthy retrials, *e.g.*, by demonstrating in a particular case that implementation of the harmless error standard is appropriate. 28 U.S.C. § 2111 (1982). *See* Brown, *Federal Special Verdicts: The Doubt Eliminator*, 44 F.R.D. 338 (1967); Comment, *Special Verdicts: Rule 49 of the Federal Rules of Civil Procedure*, 74 Yale L.J. 483 (1965).

Additionally, the use of special interrogatories "accords with the inherent divisional lines between the roles of judge and jury, the boundaries of which are so easily transgressed in patent cases tried to juries." *Baumstimler*, supra at 1071, 215 USPQ at 583. In this case, the district court began

its opinion on whether Sowa had met its burden of demonstrating the Shahan patent to be invalid by noting that, "Because the issue of obviousness under 35 U.S.C. § 103 is one of law rather than of fact, it is encumbent [sic] upon the court rather than the jury to make the final determination." "Guided by the jury's *findings* and by the evidence [emphasis added]," the court held the claims invalid.

There were no *express* findings, however, by which the district court could have been guided, nor were the "findings" of the jury reexamined by the court, in writing, under the appropriate standard on AmHoist's motion for judgment n.o.v. *Cf. Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 768–69, 204 USPQ 785, 789–90 (5th Cir. 1980) (Court's "independent review of the record discloses competent substantial evidence to support the jury's findings on the factual inquiries underlying the determination of validity."). Further, the district court apparently set forth its own findings of fact with respect to the scope and content of the prior art, the level of ordinary skill in the art, and the differences between the claimed invention and the prior art.

In performing its role with respect to § 103, we assume that the district court recognized that it had no *express* findings of fact on which to base its legal conclusion. A district court may not solicit only a legal conclusion from the jury and then act as factfinder preliminary to expressing agreement with its legal determination.

After the jury returned its verdict in favor of Sowa, the court ordered each side to submit proposed findings of fact, conclusions of law, and judgment within ten days. After expressing its agreement with the jury's conclusion on obviousness, which is a conclusion of law, the court stated: "This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a)." The court seems to have turned the respective roles of judge and jury upside down. We caution that the role of the jury as fact-finder must not be usurped. By its terms, Rule 52, titled "Findings by the Court," applies only to "actions tried upon

the facts without a jury or with an advisory jury."

### 3. Fraud in the PTO

On the fraud issue, the court instructed the jury that

> * * * the law imposes upon an applicant for a patent and the applicant's attorney, an uncompromising duty to be completely candid and to fully disclose all pertinent facts which *may affect* the decision that the patent examiner has to make on the question of whether to grant a patent. [Emphasis ours.]

The court continued:

> If an applicant intentionally and *fraudulently* withholds any information or makes *fraudulent* representations to the Patent Office [sic, PTO] which are false and have a *material* influence upon the examiner in deciding the question of whether to grant a patent on the invention, the patent is not enforceable. A good faith mistake does not constitute fraud. [Emphasis ours.]

The jury was also instructed that:

> The applicant's duty to disclose all facts *pertinent* to the prosecution of an application requires disclosure to the [PTO] of all *pertinent* prior art or other *pertinent* information of which applicant is aware or *reasonably should be aware.* [Emphasis ours.]

The above instructions are defective both with respect to what was stated and by reason of what was not stated.

██ It is not correct to instruct a jury that an applicant for patent must "fully disclose all pertinent facts which *may affect* the decision" of the PTO. Such instruction is broad enough to include information which might persuade the examiner to allow claims, as opposed to rejecting them.

██ Further, a jury should not be given instructions on "fraud in the PTO" that utilize phrases like "*fraudulently* withholds any information," or "makes *fraudulent* representations * * * which are *false.*" Such instructions do not aid the jury in

understanding "fraud," do not direct the jury to the relevant factual inquiries, and can only cause mental confusion.

██ Reverting to the court's recitation of a "duty to disclose all facts pertinent to the prosecution of an application," it is also clear that an applicant for patent is under no obligation to disclose "all pertinent prior art or other pertinent information" of which he is aware. *Digital Equipment Corp. v. Diamond,* 653 F.2d 701, 716, 210 USPQ 521, 538 (1st Cir.1981) ("It is not enough that the information be simply 'relevant' in some general sense to the subject matter of the claimed invention, or even to the invention's patentability."). Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the court's words, he "reasonably should be aware." The former portion of the court's instruction ignores the requirement of materiality and the latter portion overlooks the intent requirement.

It has been noted that courts have utilized at least three distinct orders of materiality: (1) an objective "but for" standard; (2) a subjective "but for" standard; and, (3) a "but it may have" standard. *E.g., Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.,* 607 F.2d 885, 899, 203 USPQ 27, 38–39 (10th Cir.1979); *Gemveto Jewelry Co. v. Lambert Bros., Inc.,* 542 F.Supp. 933, 939–40, 216 USPQ 976, 981 (S.D.N.Y.1982). Criterion (3) endorses inquiry into whether the involved facts "might reasonably have affected the examiner's decision as to patentability." *Gemveto Jewelry,* supra.

Although strikingly similar to the "but it may have" guideline, there is yet another and official "standard." PTO Rule 1.56(a), explains materiality. It says that information "is material where there is [1] a *substantial likelihood* that [2] a *reasonable examiner* [3] would consider it *important* [4] in deciding *whether to allow the application to issue* as a patent." [2] (Emphasis ours.) 37 CFR 1.56(a), third sentence (1983).

**2.** As opposed to regarding this definition as

merely referencing the allowance of *any* claims,

The PTO "standard" is an appropriate starting point for any discussion of materiality, for it appears to be the broadest, thus encompassing the others, and because that materiality boundary most closely aligns with how one ought to conduct business with the PTO. There is no reason, however, to be bound by any single standard, for the answer to any inquiry into fraud in the PTO does not begin and end with materiality, nor can materiality be said to be unconnected to other considerations:

> Questions of "materiality" and "culpability" are often interrelated and intertwined, so that a lesser showing of the materiality of the withheld information may suffice when an intentional scheme to defraud is established, whereas a greater showing of the materiality of withheld information would necessarily create an inference that its nondisclosure was "wrongful." [*Digital Equipment Corp. v. Diamond,* supra at 716, 210 USPQ at 538.]

Thus, for example, where an objective "but for" inquiry is satisfied under the appropriate standard of proof, and although one is not necessarily grossly negligent in failing to anticipate judicial resolution of validity, a lesser showing of facts from which intent can be inferred may be sufficient to justify holding the patent invalid or unenforceable, in whole or in part. Conversely, where it is demonstrated that a reasonable examiner would merely have considered particular information to be important but not crucial to his decision not to reject, a showing of facts which would indicate something more than gross negligence or recklessness may be required, and good faith judgment or honest mistake might well be a sufficient defense.

 In this case, the court should have instructed the jury that it was to determine the pertinency of the withheld information, which is a question of fact. In light of that pertinency, it could then have resolved the question of materiality and the degree thereof.

 Jury instructions must be confined to the issues as presented by the pleadings and evidence. Thus, because there was no testimony by the examiner who passed the application to issue,[3] the jury might here have been instructed as to the PTO Rule 1.56 materiality standard, the "but it may have" standard, or the objective "but for" standard.[4]

 The jury must also determine how convincing has been the proof of intent, if at all. It should, therefore, be instructed that it may find a showing on this element to be lacking entirely or that it may find intent to have been shown by any relevant degree of proof—from inference to direct evidence, *i.e.,* from gross negligence or recklessness to a deliberate scheming.

The considerations here are distinct from fraud as a common law cause of action. In the latter instance, it is usual that a jury can render a verdict for plaintiff by answering affirmatively the factual questions of (1) knowing (2) misrepresentation or

we interpret "allow the application" to mean substantially "as is" when the conduct in question occurred, thus including material and significant matters of claim scope. Of course, as previously noted, fraud, and thus materiality, are relevant only to information that might *prevent* claims from being allowed.

We also emphasize that the pertinent inquiry is not whether a reasonable examiner would want to be aware of a particular thing, but whether, after he was aware of it, he would "consider it important" in deciding whether to reject one or more claims.

3. In light of this fact, it was error to instruct the jury that the withheld or misrepresented information must "have a material influence upon the examiner."

4. Resolution of the "subjective but for" test is clearly factual, requiring as it does the testimony of the involved examiner with respect to the influential effect of the omitted or misrepresented information. We caution, however, that while resolution of the "but it may have" inquiry seems primarily factual, as the answer will likely depend upon the determination of pertinency, that answer nevertheless represents a legal conclusion. It is not a finding as to the existence of a certain thing, event, act, condition, etc. In contrast, the determination of materiality in a common law cause for deceit, like the PTO definition, normally ends with an objective finding of "importance," without resort to further "tests."

omission (3) of a material ("important" or "inducing") fact, (4) intent, and (5) reliance by the party deceived (6) to his damage. It need only answer "yes" to these fact questions to find fraud.

■ Here, however, because an applicant's misrepresentation or failure to meet his "duty to disclose to the Office information * * * which is material" will not in itself render a patent invalid or unenforceable, see 37 CFR 1.56(a) and (d), "fraud" may be determined only by a careful balancing of intent in light of materiality. The result of that balancing is obviously not a fact that may be found to exist or not, nor is it a mere matter of application of the law to the facts, both normal jury functions. It requires that judicial discretion be brought to bear, and the district court shall decide it.[5]

Sowa argues that AmHoist may not complain of the court's instructions on materiality, for it lodged no objection below. While we recognize that "fraud in the PTO" is an area of law fraught with confusion and contradiction, to allow a jury verdict of fraud to stand on these instructions would be a great injustice. Additionally, and although mindful of the sometime tactic of counsel making a conscious decision not to object to an instruction known to be erroneous, thus allowing to stand, for purposes of appeal, an error that might warrant a new trial, we nevertheless would "reverse on the ground of plain error in a jury charge that was not objected to [because] such is necessary to correct a fundamental error." *E.g.* *Cohen v. Franchard Corp.,* 478 F.2d 115, 124 (2d Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973). *See* 5A Moore's Federal Practice 51.04, at 51–18 (1982); 1 Devitt and Blackmar, *Federal Jury Practice and Instructions* ¶ 7.03, at 218–23 (1977).

### 4. The Reissue Proceeding

■ As earlier noted, AmHoist also contends that the district court erred in refusing to instruct the jury on the effect of the reissue proceedings "on Sowa's burden of proof on the issue of obviousness." Sowa counters that "at the time this case was presented to the jury the Shahan reissue application was still pending as AmHoist had been required by the PTO to submit a new oath because the previously submitted oath failed to state that the applicant had claimed more than it was entitled to."[6]

Thus, Sowa argues that "the district court properly refused to apply the presumption of validity to a pending reissue application." As the point is now moot, we need not decide the question.

Should the case be tried again to a jury, however, it is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain—a fact likewise to be taken into account by the trial judge. With respect to the "fraud" issue, it is also manifest that the decision of the PTO may have an effect on determining the degree of materiality of the involved prior art under the standards previously discussed.

AmHoist asks for guidance regarding an appropriate instruction on the effect of reissue. Other than the consequences just noted, we perceive no further impact on instructing a future jury in this case.

### 5. The Damages Issue

■ Finally, AmHoist argues that the jury's verdict of no damages is contrary to the weight of the evidence. We agree. Uncontroverted testimony indicates that

---

**5.** No question of "unenforceability" has been raised and, thus, we leave for another day discussion of the distinction between invalidating fraud and unenforceability. *See, e.g., In re Multidistrict Litigation Involving Frost Patent,* 398 F.Supp. 1353, 1367–68, 185 USPQ 729, 740–41 (D.Del.1975), *modified,* 540 F.2d 601, 191 USPQ 241 (3d Cir.1976) (patent held unenforceable in part).

**6.** Apparently, the reissue application was filed pursuant to 37 CFR 1.175(a)(4), now repealed. Thus, on making any amendment, AmHoist was required to submit a new oath. *See In re Dien,* 680 F.2d 151, 214 USPQ 10 (CCPA 1982).

both AmHoist and Sowa bid on a contract for the sale of twelve shackles falling within the scope of the claims and that Sowa was the successful bidder.

Sowa responds that "the jury's finding of zero dollars in lost profits was dictated by AmHoist's failure to submit adequate and credible evidence to demonstrate that, *but for* the infringement, AmHoist would have made the sales of shackles which Sowa made." Specifically, Sowa cites AmHoist's failure to introduce evidence that AmHoist was second to Sowa in the bidding or that "there were not completely acceptable non-infringing substitutes."

Regarding the argument on non-infringing substitutes, we agree with contentions in AmHoist's reply brief:

> It is uncontradicted, either at trial or in Sowa's brief, that International Rope and Supply requested Sowa to supply them with an *AmHoist shackle*. It is uncontradicted that Sowa did just that. There certainly exists a reasonable probability that, had Sowa not infringed AmHoist's patent, and had Sowa refused to supply International Rope with an *AmHoist shackle*, that International Rope would have bought that shackle from AmHoist.

As noted by the Tenth Circuit in *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645, 663, 206 USPQ 481, 495 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980):

> * * * the "but for" rule necessarily expresses an hypothesis. Neither the trial court nor the appellate court can demand absolute proof that purchasers of the infringing product would have bought the patent-holder's product instead. It is impossible and therefore unnecessary for the patent-holder to negate every possibility that the purchasers might not have bought another product.

Additionally, we note that the jury was not instructed at all, other than by several references to "actual loss," as to how it was to determine damages. There were no instructions as to reasonable or established royalty or as to lost profits. The jury was told only that

> In determining damages, the law does not permit the jury to award any greater sum than the monetary loss which the plaintiff has suffered as a result of the defendant's infringement, without regard to whether the defendant has gained or lost by infringement.

> The question then is: What monetary loss, if any, did the plaintiff suffer by the infringement?

> Damages must be proved as any other issue in this case: That is, the plaintiff must prove by the preponderance of the evidence the damage, if any, caused by the defendant's infringement.

> You must determine from the preponderance of the evidence the amount of money which will fairly compensate plaintiff for the actual loss, if any, on the eighteen sales made by defendant.

> It is agreed between the parties to this action that June 26, 1979 was the date on which defendant first received actual notice asserting infringement of the Shahan patent. So plaintiff's damages are limited to the actual loss on those eighteen sales.

> In no event can damages exceed $21,498.

Although Sowa stipulated that "claims 3, 5 and 7 of the Shahan patent have been infringed by shackles [it] *manufactured and sold*" (emphasis ours), we must also mention that the eighteen sales referred to in the above instructions are not chronicled in the list of stipulated facts which the court read to the jury. The parties' briefing on the extent of infringement is lacking in detail. Eighteen sales were admitted, however, by counsel for Sowa at an in-chambers discussion of the court's proposed jury instructions.

### 6. Sowa's Antitrust and Unfair Competition Counterclaims

After denying AmHoist's motion for judgment n.o.v. or, in the alternative, for a new trial, the court held that there was sufficient evidence "to satisfy the jury that

there was intentional fraud as distinguished from technical fraud." It then ordered Sowa's antitrust and unfair competition claims based on its allegations of fraud in the PTO set for trial, prompting AmHoist to move for summary judgment and Sowa for partial summary judgment.

On cross-appeal, Sowa argues that the trial court erred in granting AmHoist's summary judgment motion and in dismissing Sowa's counterclaims. It contends that the district court erred in holding that, at the least, the "subjective but for" test of materiality must be satisfied and was not. Additionally, it suggests that the dismissal was erroneous because "Sowa either proved, or offered to prove, the other elements required to make out a Sherman Act § 2 violation and the trial court did not question the presence of such other elements." Although AmHoist asserts that the counterclaims are defective for failure to introduce or offer evidence on the relevant market, Sowa responds that "relevant market is not a necessary element of a Section 2 Sherman Act violation under established Ninth Circuit Law."

Sowa asserts that if there existed a controversy over the Ninth Circuit's view that no relevant market need be pleaded or proved, it "has long since been resolved" by Judge Hufstedler's opinion for the court in *Cornwell Tools Co. v. C.T.S. Co.,* 446 F.2d 825, 832 (9th Cir.1971), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 715, 30 L.Ed.2d 740 (1972). In that case, a contract action by a manufacturer against its former distributor to recover the purchase price of merchandise sold to the distributor, the defendant counterclaimed for violation of section 2 of the Sherman Act, asserting that plaintiff had "attempted to gain monopolistic control over the sale of tools in California and Nevada." In addition to its offer to prove that plaintiff tried to drive it out of business, the court stated that "CTS had to prove two additional elements: (1) [plaintiff] had the specific intent to monopolize, and (2) it had sufficient market power to come dangerously close to success." *Id.*

■ Interpretation of this case as dispensing with a showing of relevant market is not plausible, for it would preclude analysis of "monopoly"—that market position alleged to have been attempted, and as to which there apparently must be a "dangerous probability of success." Allegations of monopolization or attempt to monopolize cannot be resolved without determining the subject of the supposed or desired monopoly, an issue that has been the focal point of numerous antitrust disputes. *See Acme Precision Products, Inc. v. American Alloys Corp.,* 484 F.2d 1237, 1240, 179 USPQ 453, 454–55 (8th Cir.1973) ("It seems to this court clear, both on authority and logic, that when a charge is made of an attempt to monopolize, the first question would be— 'to monopolize what?' "). Accordingly, we hold that proof of relevant market is requisite to a holding that 15 U.S.C. § 2 has been violated.

Sowa cites cases that rely on *Lessig v. Tidewater Oil Co.,* 327 F.2d 459 (9th Cir.), *cert. denied,* 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964), a Sherman Act and Clayton Act case that arose from Tidewater's cancellation of a service station lease and dealer contract with Lessig, for the proposition that proof of relevant market is dispensable in "attempt" cases. However, that case was decided prior to *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), where the Supreme Court said:

> To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent in terms of the relevant market for the product involved. [*Id.* at 177, 86 S.Ct. at 350.]

Indeed, the Ninth Circuit itself has acknowledged that proof of relevant market is essential. *Mayview Corp. v. Rodstein,* 620 F.2d 1347, 1356, 205 USPQ 302, 310 (9th Cir.1980); *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 993 n. 13, 202 USPQ 342, 348 n. 13 (9th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980);

*Cataphote Corp. v. DeSoto Chemical Coatings, Inc.,* 450 F.2d 769, 771–72, 171 USPQ 736, 738 (9th Cir.1971).

Additionally, *Lessig v. Tidewater Oil Co.,* the asserted "Ninth Circuit view," has been expressly rejected by a number of other courts. *Acme Precision Products, Inc. v. American Alloys Corp.,* supra; *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 117 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981); *Spectrofuge Corp. v. Beckman Instruments, Inc.,* 575 F.2d 256, 276 n. 69 (5th Cir.1978), *cert. denied* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *United States v. Chas. Pfizer & Co., Inc.,* 245 F.Supp. 737, 738–39 (E.D.N.Y.1965); *Becker v. Safelite Glass Corp.,* 244 F.Supp. 625, 637–38 (D.Kan.1965); *United States v. Johns-Manville Corp.,* 231 F.Supp. 690, 699–701 (E.D. Pa.1964). *See also Moraine Products v. ICI America, Inc.,* 379 F.Supp. 261, 265 (N.D.Ill. 1974) (antitrust count alleging fraudulent procurement and enforcement dismissed because of failure to plead "the relevant market for the patent [sic, claimed invention] and the exclusionary power of the patentee within that market").

 Sowa also argues, however, that fraudulent procurement of a patent should be classified with those types of conduct that have been held to be *per se* violations of 15 U.S.C. § 2. The answer to this contention is a simple one.

The patent system, which antedated the Sherman Act by a century, is not an "exception" to the antitrust laws, and patent rights are not *legal monopolies* in the antitrust sense of that word. Accordingly, if a patent is held to have been obtained illegally, it is not properly said, *ipso facto,* that it was all along an *illegal monopoly* and, thus, that its procurement and attempted enforcement was a *per se* violation of the antitrust laws. A holding that monopoly analysis should end in favor of liability on a determination of fraud, without more, would signal a fundamental misunderstanding of the substance and purposes of both the patent and the antitrust laws.

Accordingly, we affirm the district court's dismissal of Sowa's counterclaim under 15 U.S.C. § 1, its counterclaim of monopolization and conspiracy to monopolize under 15 U.S.C. § 2, and, because Sowa may have been misled by Ninth Circuit precedent, we reverse the court's decision to dismiss the attempt-to-monopolize counterclaim. On remand, the attempt claim may be scrutinized again after reconsideration of the fraud allegation in view of the law discussed above. Of course, should Sowa fail to meet its burden of proof of fraud, or should it fail to offer proof of relevant market and a dangerous probability of success of monopolization, the claim should again be dismissed.

In conclusion, we must note the indications in the transcript of proceedings that there may have been some confusion with respect to "intentional fraud" and "technical fraud." These terms, as the district court apparently recognized, are not interchangeable, yet any confusion that may have resulted is understandable.

Although an unfortunate choice of words, the Supreme Court in *Walker Process,* supra, stated that an "honest mistake" as to the effect on patentability of withheld information was merely "technical" fraud. Several years later, the CCPA erred in its use of that term, labeling as "technical fraud" the proof of all elements of a common law action for fraud. *Norton v. Curtiss,* 433 F.2d 779, 57 CCPA 1384, 167 USPQ 532 (1970). We here endorse the meaning utilized by the Supreme Court, although we will attempt to couch future discussion of such claims simply in terms of "fraud" and "no fraud."

On re-reading his jury instructions, the district judge noted the following at oral argument on AmHoist's motion for summary judgment:

I think I may have given them not only intentional fraud, but possibly some other confusing language. But let's assume for a minute, as I am doing, that the jury found intentional fraud in the case. The question then arises as to whether or not when the patent examiner recommended

reissue, he made the determination that that fraud was not material in the Walker sense, material—pardon me—technical fraud, on the patent office, as the jury found, but not material in the Walker sense.

He also noted that the instructions on fraud contained a "paragraph which describes an applicant's duty, none of which are tied to materiality or intentional fraud."

In evaluating fraud and the antitrust counterclaim, the court remarked that:

First, my instructions, as I have indicated, were designed to submit to them intentional fraud and I did touch on materiality. However, I think that it's clear that I also, on the application of the parties, submitted instructions which defined the applicant's duty in terms less than all of the elements of Walker type fraud, that are required in this case.

Further, in granting AmHoist's motion, he said that "irrespective of the fraud on the patent office, if it had known of the fraud, still would have issued the patent and therefore, as to claim 3, there is no fraud that was material in the issuance."

 These excerpts seem to indicate that there was no thorough conviction on either materiality or intent. Thus, in reversing the court's decision on the attempt charge, we caution that such allegations are not lightly sustained. Further, with respect to the attempt-to-monopolize counterclaim based on fraud, we emphasize that a specific intent, greater than an intent evidenced by gross negligence or. recklessness, is an indispensable element. *E.g., United States v. Aluminum Co. of America,* 148 F.2d 416, 431–32 (2d Cir.1945).

In light of the need for reconsideration of patentability and the fraud charge by the district court, we also reverse the court's decision to dismiss Sowa's unfair competition counterclaim. On remand, however, Sowa must set forth precisely what it believes amounted to unfair competition and why, including what injury it thinks it has suffered as a result. The few cases it cited are not helpful in this regard, and its brief discussion of AmHoist's patent prosecution and enforcement activities in relation to the general policies of unfair competition is inadequate.

### Conclusion

For the foregoing reasons, we affirm the dismissal of Sowa's 15 U.S.C. § 1 counterclaims and its 15 U.S.C. § 2 monopolization and conspiracy counterclaims, we reverse the decision to dismiss Sowa's unfair competition and 15 U.S.C. § 2 "attempt" counterclaims, we reverse the holding that claims 3, 5, and 7 of AmHoist's patent are invalid for obviousness and fraud in the PTO, we vacate the award of attorney's fees, we reverse the court's determination that the jury could properly have determined that no damages were proved, and, because there exist disputed matters of fact with respect to the § 103 obviousness issue, we remand for a new trial with directions that the trial be conducted in conformance with this opinion.

AFFIRMED–IN–PART, REVERSED–IN–PART, VACATED–IN–PART AND REMANDED.