**ALBEST METAL STAMPING CORPORATION, Plaintiff,**

v.

**RANDOLPH–RAND CORPORATION and Application Art Laboratories, Co., Ltd., Defendants.**

**No. 84 Civ. 4412 (WCC).**

United States District Court, S.D. New York.

Sept. 24, 1985.

Abraham Friedman, New York City, for plaintiff.

Abelman Frayne Rezac & Schwab, New York City, for defendants; Jeffrey A. Schwab, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This action seeks a declaratory judgment of the invalidity and non-infringement of U.S. utility patent No. 4,021,891 (" '891 patent") and U.S. design patents Nos. 247,467 and 247,468 which cover magnetic clasps for women's handbags and which are owned by defendant Application Art Laboratories ("AAL") and exclusively licensed to defendant Randolph-Rand Corporation. Defendants have counterclaimed for alleged infringement of the patents in suit by plaintiff.

The action is before the Court on (1) plaintiff's motion for partial summary judgment and for dismissal of the counterclaims on the ground that the patents in suit are invalid and/or unenforceable (a) because of fraud and inequitable conduct in the prosecution of the applications therefor in the U.S. Patent and Trademark Office ("PTO") in failing to call to the attention of the PTO examiner prior patents and publications which were cited against the applications for corresponding German and Japanese patents, and (b) because the claims of the '891 patent are fully anticipated by both cited and uncited prior art; and (2) defendants' cross-motion for summary judgment dismissing the complaint on the ground of *res judicata.*

Both motions are denied in all respects.

*The patented inventions*

The '891 patent was issued to AAL on an application filed April 18, 1974 in the name of Tamao Morita of Tokyo, Japan. It covers a magnetic clasp having two separable parts, one of which is attached to the body of a handbag and the other of which is attached to the flap. The "female" part includes a permanent magnet, for example of cylindrical shape, with opposite planar faces of opposite polarity, and with a hole, for example of cylindrical shape, extending axially through the magnet from one face to the other. The remote face of the magnet is covered by a ferromagnetic pole plate which extends across one end of the hole. The "male" part consists of a ferromagnetic pole plate which is adapted to overlie the adjacent face of the magnet and which has projecting from its inner face a ferromagnetic rod of the same shape as the hole and of slightly smaller-cross-sectional size so as to fit into the hole and of such length that its outer end can contact the pole plate on the female part when the pole plate on the male part is near or just touches the adjacent face of the magnet. This completes a ferromagnetic path from one pole plate through the hole in the magnet to the opposite pole plate and concentrates the magnetic flux to increase the magnetic attraction between the two parts and their resistance to axial separation.

The projection of the rod on the male part into the hole in the magnet of the female part provides a mechanical interlock which prevents lateral sliding movement of the two parts relative to one another and provides a more secure closure.

In an alternative construction, the pole plate on the female part is also provided with a ferromagnetic rod shaped and sized to fit into the hole in the magnet and of such length as to project only part way through the magnet. The rod on the male part is correspondingly shortened so that the ends of the two rods come into contact when the pole plate on the male part is near or just touches the adjacent face of the magnet. The rod on the male part likewise projects into the hole in the magnet to provide the mechanical interlocking action described above.

The outer edge and one or both faces of the magnet may be covered with a non-ferromagnetic material, such as brass, to further concentrate the magnetic field of the magnet through the ferromagnetic path as well as improving the appearance of the device and providing means, such as a projecting flange, to facilitate attachment of the parts to a handbag, for example by sewing through holes in the flange.

The two design patents in suit, issued to AAL on applications filed December 17, 1975 in the name of Tamao Morita, cover the appearance of the device shown in the utility patent. The designs shown in the two patents are virtually identical except that in one of them the device is of circular cross-sectional shape while in the other it is of rectangular shape.

*The cited prior art*

The prior U.S. patents to Brett (No. 3,141,216), and Daddona (No. 3,372,443) show magnetic garment clasps which are similar to that of the '891 patent except that both parts of the clasp include a permanent magnet. Each magnet is of cylindrical shape, with a cylindrical hole extending axially through it, with the remote planar faces of each magnet covered by a circular pole plate of ferromagnetic material with a rod of ferromagnetic material extending axially from each plate through the hole in its magnet, in position to contact the adjacent end of the rod on the mating part. The outer end portion of the rod of the "male" part projects into the hole in the magnet of the "female" part to provide a mechanical interlock and prevent lateral sliding of the two parts relative to one another. In the devices of both Brett and Daddona, the edges and remote faces of the magnets are enclosed in a formed housing which, although not specifically disclosed as such, is presumably of non-ferromagnetic metal. The Brett and Daddona devices would be functionally identical with that of the '891 patent in suit if the magnet on the male part were eliminated and its rod correspondingly shortened to allow the pole plate on the male part to come into contact with or adjacent to the proximate face of the magnet on the female part.

The prior Robinson U.S. patent No. 2,901,278 bridges this gap. It discloses a magnetic latch for doors in which the "female" part has a permanent magnet of cylindrical shape with a cylindrical hole extending axially through it. Overlying the remote planar surface of the magnet is a circular ferromagnetic pole plate. The "male" part has a circular ferromagnetic pole plate with a ferromagnetic rod projecting axially from it through the hole in the magnet, with the outer end of the rod contacting the pole plate of the female part. However, the rod, instead of being rigidly fixed on the pole plate of the male part, is axially slidable in it and a leaf spring biases the rod outwardly toward the female part so that as the two parts approach one another, the magnetic attraction between them becomes effective while the pole plate of the male piece is still a substantial distance from the proximate surface of the magnet. When the outer end of the rod contacts the pole piece of the female part, the rod slides inwardly relative to the pole piece on the male part, against the resistance of the spring, to allow the male pole piece to engage the proximate surface of the magnet. Although this is not discussed by Robinson, nor significant in a door latch, the projection of the rod on the male part into the hole in the magnet of the female part obviously would provide a mechanical interlock to prevent lateral relative movement of the two parts.

The Robinson device fully anticipates Claim 1, the only independent claim of the '891 patent in suit, except for the limitation that the rod is "rigidly attached" to the male pole plate.

The cited prior art is therefore quite close to the claims of the '891 patent, and no claims were allowed in the application for the '891 patent until after all the claims had been repeatedly rejected as obvious in view of this art and a notice of appeal had been filed. Indeed, it is not clear why the PTO examiner suddenly changed his mind and allowed the claims following a telephone interview with the applicant's attorney.

*The uncited German patents*

In support of argument of fraud or inequitable conduct with respect to the '891 patent, plaintiff relies principally upon the failure of the applicant to call to the attention of the PTO German patent No. 1,127,-509 which was issued in 1962 to Dr. Hermann Fahlenbrach, and which was cited

against an application for German patent corresponding to the '891 patent. The most relevant embodiment of the Fahlenbrach device is shown in Figures 1 and 1a of that patent. These figures, like all of the other figures of Fahlenbrach, show only one post of a magnetic clasp device. There is no specific disclosure of the structure of the mating part; presumably it is of identical construction. The part shown includes a permanent magnet of circular cross-section with a cylindrical hole extending axially through it. The remote surface of the magnet is covered by a circular pole plate of ferromagnetic material which has an integral cylindrical rod extending axially from it through the hole. The outer surface of the rod is flush with the proximate face of the magnet.

Thus when the part is mated with a similar part (or with an alternative form of part having a ferromagnetic pole plate without a magnet) there is no mechanical interlocking of the two parts to prevent lateral sliding of one relative to the other. Fahlenbrach nowhere attaches any significance to the shape or juxtaposition of the parts of his device. His sole emphasis is on the ratio of the cross sectional areas of the magnet and the ferromagnetic rod to provide maximum magnetic force.

German patent No. 1,068,149 issued in 1959 to Herbert Closset is even less relevant. It discloses a magnetic door catch in which the female part has two elongated rectangular magnets arranged parallel to one another with a space between them to receive an elongated ferromagnetic flange projecting from the male part. The inner faces of the two magnets are of like polarity. The outer and remote faces of the two magnets are supported on and enclosed within a rectangular housing of ferromagnetic material. Although the projection of the flange on the male part does interlock with the space between the magnets of the

female part to prevent lateral relative movement, this is not discussed in the Closset patent nor significant in a door latch where lateral sliding movement is prevented by the hinged mounting of the door.

■ The Fahlenbrach and Closset German patents are therefore clearly *less* relevant to the invention claimed in the '891 patent in suit than the art cited by the PTO during prosecution of the application therefor and the citation of these additional references would not conceivably have affected the decision to issue the patent. There was accordingly no fraud or inequitable conduct involved in failing to call these patents to the attention of the PTO. *Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1455–56 (Fed.Cir.1984).

Plaintiff, in its reply memorandum in support of the motion, makes much of the fact that in a recent re-examination of the '891 patent, the PTO has rejected all of the claims for obviousness in view of the German patents to Closset and Fahlenbrach, among others. This does not alter this Court's firm opinion that the German patents are less relevant than the cited art. It only creates additional doubt as to why the PTO allowed the claims over the cited art in the first instance.

*Alleged anticipation of the '891 patent claims*

■ However, the Court does not agree with plaintiff's contention that the claims of the '891 patent in suit are fully anticipated by one or more of the prior patents discussed above and are thus invalid under 35 U.S.C. § 102. Brett and Daddona fail to anticipate Claim 1 of the '891 patent in that the pole plate of the male part is not "removably positioned against" the proximate face of the magnet on the female part; instead, a magnet on the male part is interposed between them.[1] As previously men-

---

**1.** Claim 1, the only independent claim of the '891 patent, reads as follows:

1. A magnetic lock closure for use with handbags and similar containers comprising: magnetic means for supplying magnetic attraction having a first side and a second side

of opposite polarities and a hole therethrough between said two sides;
first ferromagnetic materials means rigidly secured to said first side of said magnetic means over said hole for centering the force

tioned, Robinson fails to anticipate Claim 1 in that the rod on the male part is not "rigidly attached" to the pole plate on that part. Fahlenbrach fails to anticipate Claim 1 because the rod on the male part is not "extending through" the hole in the magnet on the female part. Closset fails to anticipate Claim 1 in that it discloses no magnet with a hole extending through it from a face of one polarity to a face of the opposite polarity.

The remaining claims of the '891 patent, all being dependent on Claim 1 and incorporating by reference all of its limitations, among others, are *a fortiori* not anticipated by any of this prior art.

The motion for partial summary judgment as to the '891 patent is therefore denied.

*The design patents*

██ Plaintiff contends that in prosecuting the applications for the two design patents in suit the applicant was guilty of fraud or inequitable conduct in failing to disclose to the PTO an advertisement by Maroquinerie Sellerie & Bagages de France ("SAB") which was cited during prosecution of the corresponding applications for Japanese design patents.

The SAB advertisement shows several clasps which are apparently of the mechanical (spring detent) type rather than the magnetic type of the patents in suit. The SAB clasps differ substantially in appearance from those shown in the design patents in suit.

██ While the SAB designs are arguably more similar in appearance to the patented designs than those shown in the advertisements cited during prosecution of the applications for the design patents in suit, the SAB designs are not so clearly material to

the prosecution of the Morita applications that an intent to mislead the PTO by failing to disclose the SAB advertisement may be presumed. A patent applicant is not obligated to disclose to the PTO prior art, even if it is more relevant than that cited, unless it is material in the sense that there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1362 (Fed.Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

The differences between the SAB designs and those of the patents in suit are sufficiently significant that the Court cannot conclude that fraud has been established with the requisite "clear, unequivocal and convincing evidence." *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed.Cir. 1983).

*Defendants' cross-motion for summary judgment*

██ In their cross-motion for summary judgment, defendants seek dismissal of the complaint on the ground of *res judicata* allegedly arising out of a consent decree which the parties signed and filed in an earlier declaratory judgment action essentially duplicating the present action. The parties agreed to settle the earlier action by an agreement which permitted plaintiff to manufacture or import and sell a modified construction of magnetic clasp and required it to pay a royalty thereon to defendant Randolph-Rand. The agreement provided that the complaint and defendants' counterclaims for patent infringement would be dismissed without prejudice. But when Judge Pollack of this Court, to whom

of the magnetic attraction of said magnetic means; and
second ferromagnetic material means removably positioned against said second side of said magnetic means for contacting and being attracted to said first ferromagnetic means through said hole, said second ferromagnetic material means comprised of:
a plate adjacent said second side of said magnetic means over said hole, and

a rod the shape of said hole rigidly attached to said plate extending through said hole and contacting said first ferro-magnetic material means, whereby said second ferromagnetic material means is magnetically attracted and connected to said first ferro-magnetic materials means through said hole.

the case was assigned, signed the consent decree, he *sua sponte* modified it to provide that the complaint and counterclaims were dismissed "with prejudice." Apparently plaintiff found little market for the modified construction which it was licensed to make, and has reverted to its original construction which defendants had charged to infringe the patents in suit.

It is undisputed that plaintiff never consented to a dismissal with prejudice of the prior action, and it should not be deprived of its legal right to assert the claims therein without consent or due process of law.

Indeed, if the dismissal of plaintiff's action for a declaratory judgment of invalidity and non-infringement is deemed to have been dismissed with prejudice, so must defendants' counterclaim for infringement, so that defendants could never again sue plaintiff for infringement of the patents in suit—a result which defendants would doubtless find intolerable.

Under the circumstances, the dismissal must be treated as one without prejudice, as the parties agreed. Defendants' cross-motion must therefore be denied.

*Summary*

Both motions are denied in all respects.

SO ORDERED.