**ROHM AND HAAS COMPANY**

v.

**DAWSON CHEMICAL COMPANY, INC., et al.**

**ROHM AND HAAS COMPANY**

v.

**CUMBERLAND CHEMICAL COMPANY, et al.**

**CUMBERLAND INTERNATIONAL CORPORATION**

v.

**ROHM AND HAAS COMPANY.**

**ROHM AND HAAS COMPANY**

v.

**AMERICAN RICE GROWERS EXCHANGE.**

Civ. A. No. 74-H-790.

United States District Court, S.D. Texas, Houston Division.

May 13, 1986.

David E. Arnold, Winters, Thompson, Mathews, Dunn & Arnold, Houston, Tex., for plaintiff.

Ned L. Conley, Butler & Binion, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

### I. Introduction

On October 27, 1982 this Court, sitting without a jury held claims 1–3, 6, and 8–12 of the U.S. Patent No. 3,816,092 (RH Patent or Wilson Patent), issued June 11, 1974, to Rohm and Haas Company as the assignee of the inventors, for "Herbicidal 3, 1–dichloroanilides," valid and infringed by Crystal Chemical Company and Joe C. Eller (collectively Crystal).[1] This Court ruled that misrepresentations and/or omissions by Rohm and Haas to the U.S. Patent and Trademark Office (PTO) during the prosecution of the Wilson Patent were effectively cured by Rohm and Haas prior to the issuance of the Wilson Patent.[2]

The Federal Circuit Court on December 7, 1983 reversed and remanded the instant action on the ground that Rohm and Haas intentionally made material misrepresentations to the PTO. The Federal Circuit decision concluded that Rohm and Haas committed fraud on the PTO, rendering the Wilson Patent invalid.[3]

### A.

#### The *Dawson* and *Crystal* Case

Civil Action No. 74–H–790 (the "Crystal case"), is a patent infringement suit filed by Rohm and Haas against Dawson Chemical Company, Crystal Chemical Company and Joe C. Eller, and others. Prior to the trial of the above referenced case in 1981, Civil Action No. H–80–2552, a suit for patent infringement filed by Rohm and Haas Company against the American Rice Growers Exchange, was consolidated with the *Crystal* case. Prior to trial and during trial, Helena Chemical Company and Vertac Chemical Company, defendants in Civil Action No. 74–H–790, entered into settlement agreements and consent decrees with Rohm and Haas.

The *Crystal* case was tried in this Court in late 1981 and early 1982, and appealed to the Court of Appeals for the Federal Circuit and remanded to this Court for further proceedings. The American Rice Growers Exchange dismissed its appeal and entered into a settlement agreement and consent decree in Civil Action No. H–82–1241.

1. *Rohm and Haas Company v. Dawson Chemical Company,* 557 F.Supp. 739 (S.D.Tex.1983).

2. Defendants at the trial level were Dawson Chemical Company, Crystal Manufacturing Corp., Crystal Chemical Co., Joe C. Eller (Chairman and Chief Executive Officer of Dawson Chemical, Crystal Manufacturing, and Crystal Chemical) and American Rice Growers Exchange. On March 15, 1983, the American Rice Growers Exchange appeal was dismissed. Crystal Chemical Co. and Joe C. Eller were the only remaining appellants.

3. *Rohm and Haas Company v. Crystal Chemical Company,* 722 F.2d 1556 (Fed.Cir.1983).

## B.

### The *Cumberland Chemical* Case

Civil Action No. H–82–1241, (the *"Cumberland* suit") is also a suit for patent infringement filed by Rohm and Haas against the successor company to Crystal Chemical Company (which filed for bankruptcy in 1981), and several of the same defendants in the *Crystal* suit, including the American Rice Growers Exchange and Joe Eller. The *Cumberland* suit was filed by Rohm and Haas after the *Crystal* suit had been tried to this Court, and while the case was awaiting decision by this Court. The *Cumberland* lawsuit involves the same patent in issue in the *Crystal* case. A preliminary injunction was granted in favor of Rohm and Haas in late 1982, in the *Cumberland* case. As stated above, Rohm and Haas settled with one of the defendants, the American Rice Growers Exchange, in early 1983, and a consent decree was entered.

## C.

### The *Cumberland International* Case

Civil Action No. H–85–282 is an antitrust action filed by Cumberland International Corporation, a successor corporation to Crystal Chemical Company, against Rohm and Haas Company, (the *"Cumberland International* suit").

## D.

### The *American Rice Growers Exchange* Case

Civil Action No. H–85–618 (the "ARGX suit") is a lawsuit filed by Rohm and Haas for a declaration of its rights under the settlement agreement and consent decree entered into with the American Rice Growers Exchange in the *Cumberland* suit.

Pending before the Court are the following motions: (1) Crystal Chemical Company and Joe C. Eller's (Crystal) Motion for Partial Summary Judgment in Civil Action No. 74–H–790, consolidated with 80–H–2552, styled *Rohm and Haas Company v. Crystal Chemical Company, et al.;* (2) Cumberland Chemical Company and Joe C. Eller's Motion for Partial Summary Judgment in Civil Action No. 74–H–790 consolidated with 80–H–2552, styled *Rohm and Haas Company v. Cumberland Chemical Company;* (3) Cross Motion for Summary Judgment of Rohm and Haas against all the above named defendants; (4) Rohm and Haas' Motion For A Declaration Of Its Rights, An Injunction, And Other Relief in Civil Action No. H–82–1241; (5) American Rice Growers Exchange Motion for Summary Judgment in Civil Action No. H–85–846 styled *American Rice Growers Exchange v. Rohm and Haas;* and (6) Rohm and Haas' Motion For Summary Judgment in Civil Action No. H–85–618, styled *Rohm and Haas v. American Rice Growers Exchange.*

At the close of the motion conference held in chambers before the Court on September 13, 1985, the Court directed counsel to file supplemental pleadings concerning matters discussed at the motion conference, including the effect of prior decisions in this case on the pending dispositive motions submitted by the parties.

After prudent consideration of the memoranda submitted by the parties including supplemental memoranda, the arguments of counsel, and the applicable law, the Court finds that the dispositive motions submitted in the action at bar are without merit for the reasons stated hereinbelow.

## II. Contentions of the Parties

In the first cause of action, Civil Action No. 74–H–790, consolidated with H–80–2552 ("the *Crystal* case"), defendants Crystal and Eller have moved for partial summary judgment based on the *Walker Process* Doctrine. *See Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 179, 86 S.Ct. 347, 351, 15 L.Ed.2d 247 (1965). Rohm and Haas cross-claimed for summary judgment against *all* defendants in all suits on all counterclaims. In the second lawsuit, Eller and Crystal's immediate corporate successor, Cumberland Chemical Corporation ("Cumberland Chemical") filed an almost

identical motion for partial summary judgment.

## A.

### Crystal's Motion for Partial Summary Judgment

Defendant, Crystal alleges that Rohm and Haas, Plaintiff-Counterclaim Defendant, is liable for violations of Section 2 of the Sherman Act.[4] Crystal further alleges that *Walker Process* only requires proof that a patent was obtained by knowingly and willfully misrepresenting facts to the Patent Office. Moreover, Crystal contends that the Federal Circuit's holding that Rohm and Haas intentionally made material misrepresentations to the United States Patent and Trademark Office, coupled with the holding of fraud in the procurement of the Wilson Patent, necessarily strips Rohm and Haas of the exemption from antitrust laws that a patent otherwise provides, and exposes Rohm and Haas to antitrust liability based on *Walker Process*. Crystal avers that each element of its *Walker Process* counterclaim has been established by prior proceedings in this case and the Federal Circuit's resolution of the matters of "knowing fraud," "specific intent," "materiality," and "unreasonable reliance." Crystal further avers that the Federal Circuit's opinion and mandate provide the essential element to a *Walker Process* claim found lacking by this Court.

## B.

### Rohm and Haas Motion for Summary Judgment

Rohm and Haas contends that its curative efforts are a complete defense to Crystal's and Cumberland's *Walker Process* claims. Rohm and Haas further contends that the Federal Circuit left undisturbed the finding by this Court that the commencement and prosecution of this cause were based on good faith and the reasonable belief by Rohm and Haas that Crystal and the other defendants infringed a valid and enforceable patent. Rohm and Haas argues that the holding in *Walker Process* requires proof that a patentee enforced his patent with knowledge of the patent's invalidity. Therefore, Rohm and Haas argues that *Walker Process* necessarily requires bad faith enforcement of a patent or the knowing assertion of baseless claims. Rohm and Haas avers that the objective patentability of the Wilson invention renders Crystal's *Walker Process* claims deficient as a matter of law.

Rohm and Haas contends that Crystal failed to prove at trial in this Court the other elements necessary to a Section 2 Sherman Act case; (1) illegal and willful acquisition or maintenance of monopoly power in the relevant market, (2) specific intent, and (3) antitrust injury and causation within the meaning of the Sherman Act. Rohm and Haas further contends that Crystal's *Walker Process* counterclaim is barred by the First Amendment of the Federal Constitution and by the *Noerr-Pennington* Doctrine because Rohm and Haas acted like any other patentee seeking to protect presumptively valid patent rights.

Rohm and Haas avers that Crystal's tying allegations are meritless, since the Federal Circuit did *not* address the matter of Crystal's tying agreement. Accordingly, it is argued that this Court's prior rejection of Crystal's tying claims should be accorded *res judicata* effect.

Rohm and Haas alleges, in sum, that (1) it has not violated Sections 1 and 2 of the Sherman Act or Section 4 of the Clayton Act;[5] (2) this case is *not* "exceptional"

---

4. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor ..." 15 U.S.C. § 2 (1973).

5. 38 Stat 731, 15 U.S.C. § 15 (1982):
 Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover

within the meaning of the patent laws (35 U.S.C. § 285);[6] and (3) defendants are *not* entitled to recover their attorneys' fees.

With respect to Cumberland, Rohm and Haas alleges in its cross-motion for summary judgment and memorandum in support that Cumberland's antitrust counterclaim and claims for attorneys' fees should be dismissed because:

(1) Cumberland does not have an effective counterclaim on file with the Court;

(2) Various fact findings by this Court foreclose Cumberland from litigating its antitrust causes of action under the doctrines of *res judicata, collateral estoppel,* and *stare decisis;*

(3) Cumberland has not suffered a legally cognizable injury;

(4) Cumberland is *not* entitled to recover attorneys' fees by virtue of 35 U.S.C. § 285.

### C.

### Cumberland's Motion for Partial Summary Judgment

Cumberland asserts that it has a valid counterclaim in the action at bar because an antitrust claim is a separate statutory cause of action that, even though not asserted as a counterclaim in a prior patent infringement suit, would not be precluded by the judgment entered in the prior infringement action by virtue of *res judicata.* Cumberland further asserts that the issue of whether Rohm and Haas is liable to Cumberland for violation of the antitrust laws and the issue of damages including attorneys' fees remain for adjudication before this Court.

### D.

### Cumberland International's Case

Cumberland International filed a separate cause of action against Rohm and Haas in this Court (H–85–282) for alleged violations of the antitrust laws and unfair competition. In addition, Cumberland International seeks to recover its 1983 lost profits.

### III. Applicable Legal Principles

### A.

### The Patent Standard

■ The procurement of a patent entitles the patentee to prevent others from making or selling the patented product or from using the patented production process, and also entitles the patentee to use the legal right to restrict competition. The patent standard is basically constitutional. Article I, Section 8 of the Constitution authorizes Congress "to promote the Progress of ... useful Acts" by allowing monopolies for limited periods. Under that power Congress may not enlarge the patent monopoly without regard to the innovation, advancement or social benefit gained thereby. *Graham v. John Deere Co.,* 383 U.S. 1, 6, 86 S.Ct. 684, 688, 15 L.Ed.2d 545 (1966).

### B.

### The Antitrust Standard

The purpose of the antitrust laws is to preserve the health of the competitive process by discouraging practices that make it difficult for consumers to buy at competitive prices. It is not the purpose of antitrust laws to confer patents or to resolve disputes between rival applicants for a patent. *Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261 (7th Cir.1984).

### C.

### Relationship Between Patent and Antitrust Laws

Economic arguments can be made that the patent-antitrust statutes have a common goal of maximizing wealth by facilitat-

---

threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

**6.** 35 U.S.C. § 285 states in pertinent part:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

ing the production of what consumers want at the lowest cost. However, despite their economic congruency, the patent-antitrust laws are juridically divergent. The antitrust laws condemn monopoly, and "the very object" of the patent laws "is monopoly." *Bement v. National Harrow Co.*, 186 U.S. 70, 91, 22 S.Ct. 747, 755, 46 L.Ed. 1058 (1902). Settled law holds that the patent monopoly is an "exception to the general rule against monopolies." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381 (1945).

The broad power to exclude competition granted by the patent laws requires an accommodation between the patent laws and the antitrust laws. The monopoly power condemned by § 2 of the Sherman Act is the power to exclude competition from a relevant market, yet the power to exclude is precisely the power granted by the patent laws. *United States v. DuPont & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956). Patent laws place no limitation on the granted power to exclude even when the patented invention is used in a product that creates and defines its own relevant market. *SMC Corporation v. Xerox Corporation*, 463 F.Supp. 983 (D.Conn. 1978).

The reconciliation of the interrelationship between the patent and antitrust laws has long been the focus by the courts as well as by commentators in their analysis of the complex interaction between the two conflicting bodies of law. *See Walker-Process Equipment, Inc. v. Food Machinery & Chemical Corp., supra. Rex Chainbelt v. Harco Products, Inc.*, 512 F.2d 993 (9th Cir.), *cert. denied*, 423 U.S. 831, 96 S.Ct. 52, 46 L.Ed.2d 49 (1975); *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416 (10th Cir.), *cert. denied*, 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed.2d 651 (1952); P. Areeda & D. Turner, III. Antitrust Law § 704 a, at 114–15 (1978).

## D.

### *Walker Process* Doctrine

Under the *Walker Process* Doctrine, a defendant in a patent infringement suit may counterclaim for treble damages under sections 1 and 2 of the Sherman Act.[7] The *Walker Process* Court held that "the enforcement of a patent procured by fraud on the Patent Office *may* be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present. In such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party." 15 L.Ed. at 249, 250.[8]

Cases interpreting *Walker Process* hold that obtaining a patent by means of fraud on the Patent Office can, but does not always violate section 2 of the Sherman Act. *United States v. Singer Mfg. Co.*, 374 U.S. 174, 196–197, 83 S.Ct. 1773, 1784–85; 10 L.Ed.2d 823 (1963); *Brunswick Corp. v. Riegel Textile Corp., supra; American*

7. In *Walker Process* Justice Harlan stated:
It is well also to recognize the rationale underlying this decision, aimed of course at achieving a suitable accommodation in this area between the differing policies of the patent and antitrust laws. To hold, as we do, that private suits may be instituted under § 4 of the Clayton Act to recover damages for Sherman Act monopolization knowingly practiced under the guise of a patent
*[382 U.S. 180, 86 S.Ct. 351]
* procured by deliberate fraud, cannot well be thought to impinge upon the policy of the patent laws to encourage inventions and their disclosure.
*Walker Process, supra*, 382 U.S. at 179, 86 S.Ct. at 351, 15 L.Ed.2d at 253.

8. In *Walker Process*, Justice Harlan stated in his concurring opinion:
We hold today that a treble-damage action for monopolization which, but for the existence of a patent, would be violative of § 2 of the Sherman Act may be maintained under § 4 of the Clayton Act if two conditions are satisfied: (1) the relevant patent is shown to have been procured by knowing and willful fraud practiced by the defendant on the Patent Office or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the fraudulent manner in which it was obtained; and (2) all the elements otherwise necessary to establish a § 2 monopolization charge are proved.
*Walker Process, supra* 382 U.S. at 179, 86 S.Ct. at 351, 15 L.Ed.2d at 252.

*Cyanamid Co. v. FTC,* 363 F.2d 757, 770–71 (6th Cir.1966). The Federal Circuit in *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350 (Fed.Cir.1984) specifically addressed the issue of whether fraudulent procurement of a patent should be classified with those types of conduct that have been held to be *per se* violations of Section 2 of the Sherman Act. The *American Hoist* Court ruled:

> The patent system, which antedated the Sherman Act by a century, is not an 'exception' to the antitrust laws, and patent rights are not *legal monopolies* in the antitrust sense of that word. Accordingly, if a patent is held to have been obtained illegally, it is not properly said, *ipso facto,* that it was all along an *illegal monopoly* and, thus, that its procurement and attempted enforcement was a *per se* violation of the antitrust laws. A holding that monopoly analysis should end in favor of liability on a determination of fraud, *without more,* would signal a fundamental misunderstanding of the substance and purposes of both the patent and the antitrust laws.

(Emphasis added). 725 F.2d at 1367.

■ For a patent fraud to create or threaten to create monopoly power violative of Section 2 of the Sherman Act three conditions must be shown *in addition to proof* that the patentee procured the patent by fraud:

1. The patent at issue must dominate a relevant market. *See Walker Process Equipment, Inc. v. Food Machinery & Chem. Corp., supra,* 382 U.S. at 177–78; 86 S.Ct. at 350; *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d at 1366–67; *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 993 n. 13 (9th Cir.1979). Allegations of monopolization or attempt to monopolize cannot be resolved without determining the subject of the supposed or desired monopoly. *Acme Precision Products, Inc. v. American Alloys Corp.,* 484 F.2d 1237, 1240 (8th Cir.1973).

2. The fraud must be *material in an antitrust sense* in that the alleged infringer/antitrust counterclaimant must show that but for the fraud no patent would have been issued to anyone. *American Hoist & Derrick Co., supra* at 1366.

■ 3. The patent must have some colorable validity, conferred for example, by the patentee's efforts to enforce it by bringing patent-infringement suits. *Handgards, Inc. v. Ethicon, Inc.,* held that the offense which is sanctioned by the antitrust laws is *not* the fraudulent procurement of a patent in circumstances that create monopoly power *but* the bringing of groundless suits for patent infringement. This metamorphosis is natural because most antitrust claims are asserted as counterclaims to patent-infringement suits and because the abusive prosecution of such suits could violate the antitrust laws even if the patent had not been obtained by fraud. 601 F.2d at 993. *Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d at 265; *Handgards, Inc. v. Ethicon, Inc., supra,* 601 F.2d at 993 and n. 13. However, enforcement activities are not the *sine qua non* of monopolizing by patent fraud. *Brunswick Corp. v. Riegel Textile Corp., supra,* 752 F.2d at 265. The bringing of a series of ill-founded patent-infringement actions, in bad faith, can constitute an antitrust violation in and of itself *if* such suits are initiated or pursued with an intent to monopolize a particular industry and the other elements of a Section 2 violation are present. *Otter Tail Power co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 395 (1973); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The imposition of antitrust liability will depend upon plaintiff's proof that the defendant-patentee possessed or threatened to possess an ability to lessen competition in the relevant market. *Handgards, Inc. v. Ehticon, Inc.,* 601 F.2d at 993, n. 13.

## II. Analysis of Antitrust Liability After Finding of Fraud on the PTO

### A.

### Bad Faith Enforcement of Patent

The case at bar presents an instance in which the boundaries of the patent-anti-

trust dichotomy must be examined by the Court. To determine whether there exists Section 2 liability the Court must necessarily examine the distinctions between lawful patent-related exclusionary conduct and unlawful patent-related exclusionary conduct. Only *unlawful* patent-related exclusionary conduct or intent satisfies the requirement of intent to monopolize or the exercise of exclusionary conduct within the meaning of Section 2 of the Sherman Act.

Rohm and Haas alleges that *Walker Process* requires *bad faith* enforcement of a patent. Rohm and Haas further alleges that its good faith effort to cure and its reasonable belief that cure had been accomplished firmly establish that Rohm and Haas did not enforce its Wilson patent in bad faith, knowing that it was invalid.

First, the Court notes that the Federal Circuit did *not* rule on whether Rohm and Haas enforced its Wilson patent in bad faith by bringing an infringement action. The Federal Circuit did rule that: (1) Rohm and Haas' effort to cure was *not* sufficient and (2) Rohm and Haas' alleged good faith "belief that Examiner Thomas appreciated the information supplied and its implications is irrelevant." *See Rohm and Haas v. Crystal Chemical Company*, 722 F.2d at 1567.

Infringement actions initiated and conducted in bad faith contribute nothing to the furtherance of the policies of either the patent law or the antitrust law. *Handgards, Inc. v. Ethicon, Inc., supra*, 601 F.2d at 993.[9] Bad faith enforcement of a patent *may* constitute an attempt to monopolize violative of Section 2 of the antitrust law. *Id.* However, *not* all bad faith infringement actions will necessarily constitute attempts to monopolize violative of Section 2. *Id.*

■ The Court does not agree with Rohm and Haas' argument that *Walker Process* requires bad faith enforcement of a patent. The Court also differs with

Rohm and Haas' contention that its curative efforts, although insufficient according to the Federal Circuit's ruling, are nonetheless a complete defense to a *Walker Process* claim. On the other hand, this Court does *not* agree with Crystal's and Cumberland's argument that the Federal Circuit's finding of fraud on the Patent Office also constitutes a finding of bad faith enforcement of a patent by Rohm and Haas.

■ This Court finds that the Federal Circuit did *not* rule on whether Rohm and Haas brought an infringement action against Crystal and Cumberland to enforce the Wilson Patent in bad faith, knowing that the Wilson Patent was invalid. The Court further finds that disputed fact issues may exist regarding whether Rohm and Haas enforced its Wilson Patent in bad faith. The existence of contested fact issues on this point necessarily precludes summary adjudication.

The Court finds that Rohm and Haas' attempts to cure do not provide a complete defense to a *Walker Process* claim. The Court further finds that the finding of fraud on the Patent Office does *not* equate a finding of bad faith enforcement of a patent as a matter of law.

In the action at bar, Crystal contends that each element of its *Walker Process* counterclaim has been established by prior proceedings in this case and the Federal Circuit's resolution of the matters of "knowing fraud," "specific intent," "materiality," and "reasonable reliance." The Court must now analyze the above mentioned terms in light of (1) the prior findings made by this Court, (2) the findings made by the Federal Circuit and (3) the applicable law.

### B.
### Knowing Fraud

The Court recognizes that *Walker Process* expressly held that only "intentional

9. *Handgards, Inc. v. Ethicon, Inc.* was *not* a *Walker Process* case. Plaintiff Handgards did not contend that Ethicon sought to enforce a fraudulently procured patent. Instead, Handgards asserts that Ethicon prosecuted infringement actions in bad faith, that is, with knowledge that the patents, though lawfully obtained, were invalid.

fraud," consisting of the knowing and willful misrepresentation of material facts is actionable, and that mere "technical fraud," or honest mistake in judgment is not actionable under the antitrust laws.[10] The Court finds that Crystal is correct in contending that the Federal Circuit ruled that the fraud on the Patent Office by Rohm and Haas was *not* the result of honest mistake.[11] However, as stated before, the Court finds that even where there has been a finding of fraud on the Patent Office, the Court must determine whether the antitrust plaintiff has met its burden of proof as to the remaining elements of a Section 2 Sherman Antitrust Act claim.

In *Walker Process*, Justice Harlan stated in his concurring opinion:

> Conversely, such a private cause of action would *not* be made out if the plaintiff: (1) showed no more than invalidity of the patent arising, for example, from a judicial finding of 'obviousness' or from other factors sometimes compendiously referred to as 'technical fraud'; or (2) showed fraudulent procurement, but no knowledge thereof by the defendant; or (3) failed to prove the elements of a § 2 charge even though he has established actual fraud in the procurement of the

patent and the defendant's knowledge of that fraud.

*Walker Process, supra,* 382 U.S. at 179, 86 S.Ct. at 351, 15 L.Ed.2d at 252. This Court makes no ruling on whether Rohm and Haas had knowledge of the fraud during the prosecution of the Wilson Patent. The Court recognizes that the Federal Circuit ruled that Rohm and Haas committed fraud on the Patent Office. This Court does *not* agree with Crystal's contentions that a finding of fraud, even knowing fraud on the Patent Office by Rohm and Haas *without more*, constitutes a violation by Rohm and Haas of the antitrust laws.

### C.

### Specific Intent

▮▮▮ Crystal argues that the Federal Circuit's ruling disposed of the issue of "specific intent." The Court agrees with Crystal's argument that the Federal Circuit held that Rohm and Haas made willful and intentional misrepresentations to the Patent Office during the prosecution of its Wilson Patent. The Court does *not* accept Crystal's argument that the Federal Circuit found "specific intent" in the antitrust sense.[12] The Federal Circuit did *not* rule on whether Rohm and Haas specifically intended to monopolize in violation of the

---

**10.** The *American Hoist* Court ruled:

Although an unfortunate choice of words, the Supreme Court in *Walker Process, supra,* stated that an 'honest mistake' as to the effect on patentability of withheld information was merely 'technical' fraud. Several years later, the CCPA erred in its use of that term, labeling as 'technical fraud' the proof of all elements of a common law action for fraud. *Norton v. Curtiss,* 433 F.2d 779, 57 CCPA 1384, 167 USPQ 532 (1970). We here endorse the meaning utilized by the Supreme Court, although we will attempt to couch future discussion of such claims simply in terms of 'fraud' and 'no fraud.'

*See American Hoist, supra,* at 1367.

**11.** The Federal Circuit ruled:

It cannot be said that these misrepresentations to the PTO were the result of an honest mistake.

*See Rohm and Haas v. Crystal Chemical Co.,* 722 F.2d at 1571.

**12.** The Federal Circuit Court held:

It cannot be said that these misrepresentations to the PTO were the result of an honest mistake. *Cf. Norton v. Curtiss,* 433 F.2d 779, 794, 167 USPQ 532, 544 (CCPA 1970). While direct proof of intent to mislead is normally absent, such submissions usually will support the conclusion that the affidavit in which they were contained was the chosen instrument of an intentional scheme to deceive the PTO. In any event, proof of the actual state of mind of the applicant or persons associated with or representing an applicant is not required. 'The intent element * * * may be proven by a showing of acts the natural consequences of which are presumably intended by the actor.' *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144 at 1151 (Fed.Cir.1983). Thus, the trial court's assertion that 'what is important' to the fraud inquiry was affiant-inventor McRae's actual state of mind was legal error. Question "1" must be answered in the affirmative.

*Rohm and Haas v. Crystal Chemical Company,* 722 F.2d at 1571.

antitrust laws.[13] Under Section 2 of the Sherman Act completed monopolization requires proof of two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *C.E. Services, Inc. v. Control Data Corporation*, 759 F.2d 1241 (5th Cir.1985), *citing, United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). A prerequisite to success under Section 2 of an attempted monopolization is proof of two elements: (1) *specific intent* to accomplish the illegal result, and (2) a dangerous probability that the attempt will be successful. *C.E. Services, Inc., supra*, at 1244; *United States v. American Airliner, Inc.*, 743 F.2d 1114, 1118 (5th Cir.1984); *Domed Statium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490 (5th Cir.1984); *Spectrofuge Corp. v. Beckman Industries, Inc.*, 575 F.2d 256, 276 (5th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). The Court finds that substantial fact issues exist on whether Rohm and Haas specifically intended to monopolize in violation of the antitrust laws.

## D.

### Materiality

Crystal asserts that under *Walker Process* it [Crystal] need only establish that intentional material misrepresentations were made to the Patent Office to obtain a patent which was later enforced. Rohm and Haas argues that its intentional misrepresentations to the Patent Office were not material because the Wilson Patent is objectively patentable.

Fraud on the Patent Office may be determined only be a careful balancing of intent in light of materiality. *American Hoist &*

*Derrick Co.*, 725 F.2d at 1364. This Court finds that the Federal Circuit ruled on the materiality issue in the patent sense; that is, an applicant's misrepresentation or failure to meet his duty to disclose to the Patent Office information which is material.[14]

Courts necessarily focus on the degree of materiality in making a determination of whether the patent holder committed fraud on the Patent Office. In analyzing the issue of fraud before the PTO, the Federal Circuit has utilized the term "inequitable conduct" in order to avoid confusion. *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559 (Fed.Cir.1984). The *Stevens* Court held that "inequitable conduct" requires a showing by clear and convincing evidence of materiality of the nondisclosed or false information.

The Court disagrees with Crystal's argument that under the *Walker Process* standard Crystal need only establish that Rohm and Haas made intentional material misrepresentations at the Patent Office. As has been stated before, *Walker Process* requires more than a finding of fraud on the Patent Office. However, the Court finds that Rohm and Haas' argument is also without merit because the Federal Circuit's finding of fraud on the Patent Office necessarily precludes re-litigation of the issue of whether the intentional misrepresentations by Rohm and Haas to the Patent Office were material.

The Court finds that materiality *in the antitrust sense* has not been litigated. The Section 2 Sherman Antitrust Act claimant must show that *but for the fraud* no patent would have been issued to anyone. *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d at 265.

The Court finds that Crystal failed to prove at trial the other elements necessary to a Section 2 Sherman Act case; (1) illegal

---

**13.** *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d at 1366–67 and *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d at 993.

**14.** The Federal Circuit ruled:

In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material. *Id.*

and willful acquisition or maintenance of monopoly power in the relevant market, (2) specific intent in the antitrust context, and (3) antitrust injury and causation within the meaning of the Sherman Act.

## III. Crystal's *Walker Process* Claim Under the First Amendment and the *Noerr-Pennington* Doctrine

### A.

#### First Amendment Analysis

Rohm and Haas argues that since its patent enforcement activities were not frivolous and did not constitute an abuse of the judicial process, then Crystal's *Walker Process* counterclaims conflict with the First Amendment. Rohm and Haas further argues that a finding by this Court of validity as to Crystal's *Walker Process* counterclaims "would deal a crushing blow to the right of free access to the courts" [15] in violation of the First Amendment.

■ The Court does *not* accept Rohm and Haas' argument that a *Walker Process* claim is barred by the First Amendment guarantee of free access to the courts. Arguably, a *Walker Process* claim might be barred by the First Amendment right of free access to the courts if an attempted enforcement of a patent in litigation, would automatically result in a violation under the *Walker Process* Doctrine *without* the necessity of finding the other elements necessary to sustain a § 2 Sherman Antitrust Act claim. *Walker Process* does *not* hold that, assuming fraud was committed by the patent holder on the Patent Office, the patent holder has committed a *per se* violation of § 2 of the Sherman Antitrust Act.

On the contrary, the *Walker Process* barrier was erected to prevent frustration of the enforcement of patents by the long reach of antitrust law. *See Handgards v. Ethicon*, 601 F.2d at 996. The *Walker Process* Doctrine reinforces rather than conflicts with the protection guaranteed to a potential patent litigant by the First Amendment.

■ The Court finds that the Federal Circuit did *not* address the issues of (1) whether Rohm and Haas conducted its patent enforcement activities in a frivolous manner and (2) whether Rohm and Haas' enforcement actions constituted an abuse of the judicial process. The Court further finds that the existence of significant fact issues precludes summary dismissal on these matters.

### B.

#### Noerr-Pennington Immunity Defense

■ Rohm and Haas argues that because it "acted like any other patentee seeking to protect presumptively valid patent rights," Crystal's *Walker Process* counterclaims conflict with the Noerr-Pennington Doctrine and Rohm and Haas is exempted from *Walker Process*. The Court disagrees with Rohm and Haas' contentions. Instead, the Court accepts Crystal's argument that the *Noerr-Pennington* Doctrine has no application to the *Walker Process* counterclaims asserted by Crystal. The *Walker Process* Doctrine is an exception to the *Noerr-Pennington* Doctrine. *California Motor Transport Co. v. Tracking Unlimited*, 404 U.S. 508, 512–13, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 542 (1972); *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1371 n. 42 (5th Cir.1983).

### IV. Attorney's Fees

Crystal asserts that this Court must conduct further proceedings on its claims for attorney's fees pursuant to 35 U.S.C. § 285. Crystal further asserts that this Court's dismissal of claims for attorney's fees must now be re-evaluated in view of the Federal Circuit's determination that Rohm and Haas' patent was procured by fraud.

The Court must review the evolution and development of the statutory and case law on the award of attorney's fees as well as the public policy considerations before analyzing the merits of Crystal's contentions

---

**15.** Rohm and Haas Company's Memorandum In Reply to Crystal's Opposition to Rohm and Haas company's Motion for Summary Judgment, page 14.

regarding attorney's fees pursuant to 35 U.S.C. § 285.

The "American Rule" has become the general principle adopted by the federal courts in the determination of attorney's fees awards. The American Rule was outlined by the Supreme Court as early as 1796 in *Arcambel v. Wiseman,* 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796) and it proscribes a fee award in the absence of authorization by statute or exceptional circumstances. The public policy considerations underlying the American Rule is the avoidance of penalty to a party for prosecuting or defending a lawsuit. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967).

Until 1946, the United States Supreme Court followed the American Rule by holding that the award of attorney's fees was not available in patent cases. *Parks v. Booth,* 12 Otto 96, 102 U.S. 96, 26 L.Ed. 54 (1880). In 1946, Congress amended § 4921 of the Revised Statutes to provide for an award of attorney's fees in patent cases.[16] Although the amended section authorized the grant of attorney's fees, the legislative intent underlying the amended statute was that fee awards should not be determined except upon a showing of extraordinary circumstances.[17]

Subsequently, the amendment to the Patent Act of 1952 codified the attorney fee award provision in 35 U.S.C. § 285 and added the limitation that the court "may award reasonable attorney fees in exceptional cases." Courts interpreting 35 U.S.C. § 285 have recognized that the

award of attorney's fees may be ordered by a court only in exceptional patent cases.

The Federal Circuit Court in *Rohm and Haas v. Crystal Chemical Company,* 736 F.2d 688 (Fed.Cir.1984) determined that "exceptional" cases involve "litigation in bad faith by the patentee, or fraud or other inequitable conduct during prosecution before the Patent Office."[18] The Federal Circuit approved the award of attorney's fees to a party "who succeeds in invalidating 'fraudulent' patents." *Rohm and Haas Company v. Crystal Chemical Company,* 736 F.2d at 693, *citing True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 509, 202 USPQ 412, 423 (10th Cir.1979); and *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Co.,* 407 F.2d 288, 294, 160 USPQ 577, 581 (9th Cir.1969).

However, the Federal Circuit in the *Crystal* decision ruled that the prevailing alleged infringer should be awarded attorney's fees only "when it would be unjust not to make such an award." *Rohm and Haas Company, supra,* at 692. The Federal Circuit in *Crystal* declined the award of attorney's fees requested by the alleged infringer on the ground that the previous ruling by the Federal Circuit that Rohm and Haas had not cured its earlier fraud in the prosecution of the application for the patent "sets new standards in this area of the law." *Rohm and Haas Company, supra,* at 693.

 The Court does not agree with Rohm and Haas that the Federal Circuit's holding denying Crystal's application for attorney's fees and expenses incurred on appeal pursuant to 35 U.S.C. § 285 neces-

---

**16.** Act of August 1, 1946, § 1, 60 Stat. 778, 35 U.S.C. § 70 (1946 ed.) reads in pertinent part: The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case.

**17.** The Senate Report stated:
It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, but the discretion given the court in this respect, in addition to the present discretion to award triple damages, will dis-

courage infringement of a patent by anyone thinking that all he would be required to pay if he loses the suit would be a royalty. The provision is also made general so as to enable the court to prevent a gross injustice to an alleged infringer.
S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), reprinted in 1946 U.S.Code Congressional Service 1386, 1387.

**18.** *See Colortronic Reinhad & Co. v. Plastic Controls, Inc.,* 668 F.2d 1 (1st Cir.1981).

sarily bars an award of attorney's fees by this Court. The Court finds that the request for attorney's fees by Crystal pursuant to 35 U.S.C. § 285 must be re-evaluated in order to determine whether consideration other than the invalidity of the Rohm and Haas patent may bear on the propriety of awarding attorney's fees.

## V. Settlement Agreement

On February 8, 1985, Rohm and Haas filed a Motion for a Declaration of its Rights, an injunction, and other relief in Civil Action No. H–82–1241 seeking to have this Court rule that Rohm and Haas has no obligation to refund any sums paid to it by American Rice Growers Exchange ("ARGX") pursuant to a settlement agreement between the parties. The settlement agreement purported to settle patent infringement litigation in this Court between the parties. The patent litigation included Civil Action No. 74–H–790, which was consolidated with Civil Action No. H–80–2552, and Civil Action No. H–82–1241. In addition, on February 8, 1985 Rohm and Haas filed a new lawsuit, Civil Action No. H–85–618 in which it seeks damages arising from the above-mentioned settlement agreement and a declaration of its rights with respect to ARGX.

Subsequently, ARGX filed suit against Rohm and Haas on February 20, 1985 in Civil Action No. H–85–846, for the purpose of obtaining repayment from Rohm and Haas of over $1.3 million paid by ARGX pursuant to the aforementioned settlement agreement between the parties and seeking damages arising from prior litigation.

Rohm and Haas asserts that *Lex Tex, Inc. v. Avtex Fibers, Inc.*, 227 U.S.P.Q. 815 (S.D.Fla.1985) supports its position that the settlement agreement between Rohm and Haas and ARGX should be enforced. In *Lex Tex*, the defendant, Avtex Fibers, entered into a settlement agreement with the patent owner and plaintiff, Lex Tex, Inc., pursuant to which Avtex agreed to make a series of payments to Lex Tex as compensation for past infringement. Subsequent to the ruling by the Federal Circuit in *J.P.*

*Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553 (Fed.Cir.1984), which was an appeal from the final judgment entered in the district court after Avtex settled, Avtex refused to make any more payments to Lex Tex, on the grounds that (1) the Federal Circuit in *Stevens* held that the subject patent was unenforceable because it had been procured by fraud on the Patent and Trademark Office, and (2) the effect of enforcing the settlement agreement between the parties would be to enforce a patent held unenforceable. The *Avtex* Court upheld the settlement agreement although the underlying patent had been subsequently held unenforceable by the Federal Circuit for inequitable conduct. The Court in *Avtex* reasoned that the policy expressed in *Lear, Inc. v. Atkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) and *Blonder-Tongue Labs Inc. v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) of ridding the public of the yoke of invalid patents was "secondary to the policy favoring settlement of disputes, especially where, as here, the settlement is for *past* infringement and does not in any way constitute a license to do something in the future." 227 U.S.P.Q. at 816. Rohm and Haas contends that the *Avtex* case is dispositive of the present dispute between ARGX and Rohm and Haas because (1) the Rohm and Haas-ARGX settlement was for "past infringement" and (2) the settlement agreement did not license the Wilson patent for any period after the Federal Circuit invalidated the Wilson patent.

ARGX argues that the *Avtex* decision provides no support for Rohm and Haas' position. ARGX distinguishes the instant action from the *Avtex* case by asserting that ARGX does not rely solely upon the invalidation for fraud, subsequent to the settlement agreement between the parties, of Rohm and Haas' Wilson patent in *Rohm and Haas Co. v. Crystal Chemical Co.* ARGX contends that the Settlement Agreement at issue was entered into by ARGX under duress.

ARGX asserts that the settlement agreement in the *Avtex* case was for past infringement only, with no prospective license, but that the settlement agreement in the present case included a prospective license under the Wilson patent.[19] Therefore, ARGX further asserts that the instant action does not fall within the ambit of the *Avtex* holding.

In *Blonder-Tongue Labs v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the United States Supreme Court observed:

> A patent by its very nature is affected with a public interest ... [It] is an exception to the general rule against monopolies and to the right to access to a free and open market. The far reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope.

*Blonder-Tongue Labs*, 402 U.S. at 343, 91 S.Ct. at 1450, *citing Precision Instrument Mfg. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed.2d 1381, 1387 (1945). The *Blonder-Tongue* Court ruled that consistent with the view expressed in *Lear, Inc. v. Adkins* "the holder of a patent should not be insulated from the assertion of defenses and thus allowed to exact royalties for the use of an idea that is not in fact patentable or that is beyond the scope of the patent monopoly granted." *Blonder-Tongue*, 402 U.S. at 349, 91 S.Ct. at 1453. In *Thompson-Hayward Chemical Company v. Rohm and Haas Co.*, 745 F.2d 27 (Fed.Cir. 1984), the Federal Circuit held that its ruling in *Rohm and Haas v. Crystal Chemical*, that the propanil patent was invalid because of fraud in the PTO committed

during its prosecution should apply to the same patent in the *Thompson-Hayward* case.[20] The *Thompson-Hayward* Court noted that although the *Blonder-Tongue* opinion was not directly on point, the ruling in *Blonder-Tongue* did *not* bar the application of the holding in *Crystal* to the same patent in the *Thompson-Howard* case.

In the action at bar, ARGX asserts that the *Lex Tex* decision ignored the Federal Circuit's earlier admonition in *Thompson-Hayward* that patent owners should not be permitted to profit from fraudulently obtained patents. Moreover, Crystal notes that in *Lex Tex*, the Court relied heavily on two cases, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir.1976), and *Rausburg Electro-Coating Corp. v. Spiller and Spiller, Inc.*, 489 F.2d 974 (7th Cir.1973), as supporting the view that under the facts of the case before it, the public policy supporting settlement of disputes outweighed the policy favoring ridding the public from the yoke of invalid patents. However, neither of the two cases addressed the competing policies in circumstances involving the patent owner's having committed fraud upon the United States Patent and Trademark Office.

ARGX points out that there is no indication in the *Lex Tex* opinion that the Court even considered the views of the Federal Circuit concerning fraud on the Patent and Trademark Office which the Federal Circuit expressed in *Thompson-Hayward.*

The Court agrees with ARGX's contention that in *Thompson-Hayward* the Federal Circuit determined that Rohm and Haas should not be allowed to profit from its fraudulently obtained Wilson patent in view of the policy that the public has a paramount interest in seeing to it that patent monopolies spring from backgrounds free from fraud. However, the Court does *not* agree with ARGX that it should be

---

**19.** The settlement agreement purportedly authorized ARGX to sell in-hand propanil at least for the 1983 and 1984 season in return for a royalty payable to Rohm and Haas of $4.75 per gallon of propanil sold.

**20.** In *Thompson-Hayward* the Federal Circuit held that although the alleged infringer did not contest the patentee's allegations of validity and enforceability, the finding of fraud on the PTO in the *Rohm and Haas* decision precluded an award of damages in favor of Rohm and Haas against Thompson-Hayward.

allowed to disavow the consent decree and settlement and that Rohm and Haas be required to (1) return to ARGX all monies paid under said Settlement Agreement and Consent Decree and (2) pay to ARGX damages arising from the prior litigations in this Court between ARGX and Rohm and Haas based on the present record.

Rohm and Haas argues that the Settlement Agreement and Consent Decree should be upheld by the Court for the following reasons: (1) ARGX voluntarily and knowingly settled this case, withdrew its appeal, and dismissed its antitrust counterclaims with prejudice; (2) at all times ARGX was represented by competent counsel (including its present counsel and at various times attorneys for its directors, dealers and/or stockholders); (3) the settlement agreement expressly dealt with the possibility of a CAFC reversal and expressly provided that no payments made before the CAFC's decision were to be refunded; (4) ARGX instituted settlement discussions and then moved in December 1982 to enforce a settlement it said had been reached having terms essentially the same as the present settlement; (5) ARGX entered into the settlement after it filed its brief on appeal so it had full knowledge of all facts and law; (6) ARGX sought to postpone the criticized depositions of its members and dealers on the same grounds which it now contends constitute duress—the Court rejected these arguments and ordered the depositions to go forward promptly; (7) no objection to the deposition questions were raised on the basis now asserted although ARGX's current counsel were present; (8) after the CAFC's decision ARGX moved to dissolve the injunctive provisions of the settlement and did not then assert any of its present complaints; (9) ARGX waited 22 months after the settlement (and a year after the CAFC's decision) before alleging coercion, lack of consideration or prospectivity—during those 22 months it look full advantage of the agreement; and (10)

despite all of its rhetoric about how the criticized settlement would bankrupt it, the fact is that the settlement was entered into and it did not bankrupt ARGX.

The Court cannot agree fully with Rohm and Haas that "at the time ARGX signed the Settlement Agreement, at the time ARGX entered into the said Consent Decree, and at the time it dismissed its Appeal No. 83–599, ARGX was aware of all the facts and all legal bases for the subsequent decision on appeal by the CAFC." (R & H Brief Pgs. 2–5). The Court notes that ARGX could not have known that the Federal Circuit would hold adversely to Rohm and Haas and, even more importantly, that it would set new standards by which fraud on the Patent Office would be measured.

Rohm and Haas cites *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137 (5th Cir.1985) as standing for the proposition that any unresolved factual issues concerning the validity of the settlement and consent decree are properly resolvable by this Court. The Court agrees with Rohm and Haas on that limited contention. However, the Court notes that the Fifth Circuit in *Corrugated* stated: "Summary enforcement of a consent judgment, like summary enforcement of a settlement agreement, 'is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve.'" *In re Corrugated, supra*, at 143. The *Corrugated* Court ruled that the district court erred in failing to conduct an evidentiary hearing when a material factual dispute existed concerning the settlement.[21]

■ The Court finds that material factual questions exist with regard to the formation and validity of the Settlement Agreement between Rohm and Haas and

---

21. *See Russell v. Puget Sound Tug & Barge Co.,* 737 F.2d 1510 (9th Cir.1984), *quoting Autera v. Robinson,* 419 F.2d 1197, 1200 (D.C.Cir.1969); *Kukla v. National Distillers Products Company,*

483 F.2d 619, 621 (6th Cir.1973); *Massachusetts Casualty Insurance Co. v. Forman,* 469 F.2d 259, 260 (5th Cir.1972).

ARGX. The Court further finds that the existence of controverted material factual issues precludes summary enforcement of the Settlement Agreement between Rohm and Haas and ARGX.

Accordingly, the Court finds that all dispositive motions submitted by the parties in the instant action should be denied.